John **CHAKOUIAN**, Petitioner, Appellant,

v.

John **MORAN**, Respondent, Appellee.

No. 91–2252.

United States Court of Appeals, First Circuit.

Heard May 5, 1992.

Decided Sept. 23, 1992.

Edward J. Romano, with whom John F. Cicilline, Providence, R.I., was on brief, for petitioner, appellant.

Jane M. McSoley, Asst. Atty. Gen., with whom James E. O'Neil, Atty. Gen., Providence, R.I., was on brief, for respondent, appellee.

Before BREYER, Chief Judge, CYR, Circuit Judge, and BOYLE,* District Judge.

CYR, Circuit Judge.

The district court dismissed petitioner John Chakouian's application for habeas corpus relief under 28 U.S.C. § 2254, without an evidentiary hearing. We affirm.

## I

## BACKGROUND

Petitioner was convicted of murder in the first degree under R.I.Gen.Laws § 11–23–1 on June 27, 1986, and sentenced to life imprisonment under R.I.Gen.Laws § 11–23–2. Chakouian, a white male, appealed to the Rhode Island Supreme Court, alleging that the trial court erred, *inter alia,* in refusing to conduct a *Batson* inquiry after the prosecutor had exercised a peremptory challenge to exclude a second black person from the petit jury.[1] *State v. Chakouian,* 537 A.2d 409, 413 (R.I.1988). The Rhode Island Supreme Court held that a *Batson*

inquiry was not required, as Chakouian had not demonstrated that the prosecutor utilized the State's peremptory challenges to remove "members of the *defendant's* race" from the venire. *Id.* (emphasis added). Chakouian thereafter instituted habeas corpus proceedings in the United States District Court for the District of Rhode Island.

Petitioner's sole surviving claim for relief is that the State's exclusion of two black jurors through the exercise of its peremptory challenges violated his Fourteenth Amendment right to equal protection.[2] The section 2254 petition was referred to a magistrate judge who recommended dismissal of the petition, without an evidentiary hearing. *See* Rule 10, Rules Governing § 2254 Proceedings. Over petitioner's objections, the district court adopted the findings and recommendations of the magistrate judge.

## II

## DISCUSSION

Petitioner first argues that the magistrate judge incorrectly applied *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *Peters v. Kiff,* 407 U.S. 493, 92 S.Ct. 2163, 33 L.Ed.2d 83 (1972). He urges us to construe *Batson* broadly to enable an equal protection challenge notwithstanding the absence of racial identity. Petitioner contends that *Peters* supports his claim since peremptory challenges are an important part of the petit jury selection system.[3] He further con-

---

* Of the District of Rhode Island, sitting by designation.

1. *Batson v. Kentucky,* 476 U.S. 79, 97, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986), determined that, "[o]nce the defendant makes a prima facie showing [of discrimination in the use of peremptory challenges], the burden shifts to the State to come forward with a neutral explanation for challenging black jurors."

2. In the district court, petitioner presented a Sixth Amendment claim based on the right to a jury drawn from a fair cross section of the community, made applicable to the States through the Due Process Clause of the Fourteenth Amendment. *See Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). The Sixth Amendment provides in per-

tinent part: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed...." On appeal, petitioner concedes that *Holland v. Illinois,* 493 U.S. 474, 480, 110 S.Ct. 803, 807, 107 L.Ed.2d 905 (1990), has established that the Sixth Amendment does not constrain the State's exclusion of members of a cognizable racial group at the peremptory challenge stage, provided the Sixth Amendment requirement of a representative venire has been met.

3. The district court rejected petitioner's attempt to overcome the racial identity problem through reliance on *Peters v. Kiff.* In *Peters,* which predates *Batson,* the Court reversed the conviction

tends that *Powers v. Ohio*, —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991), even though decided after his state court conviction, should be applied retroactively to his equal protection claim.[4] Petitioner argues that *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), poses no bar to retroactive application as *Powers* does not articulate a "new rule."[5] We find it unnecessary to address these contentions. Even assuming petitioner correctly interprets *Peters, Batson* and *Powers*, the petition for habeas corpus relief founders for failure to establish a prima facie case of racial discrimination under *Batson*.

### A. *Batson Discrimination*

■■■■ We assume, without deciding, that petitioner exhausted his remedies in relation to the equal protection claim in the state courts, *see* Rule 5, Rules Governing § 2254 Proceedings, and that both *Batson* and *Powers* apply.[6] Nevertheless, *Batson* makes clear that there is no requirement that the prosecution provide a race-neutral explanation for its exercise of peremptory challenges until the defendant has made a prima facie showing of racial discrimination. *See Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. The elements of a prima facie showing of racial discrimination in the exercise of the State's peremptory challenges were identified in *Batson:*

> To establish such a case, the defendant first must show that he is a member of a cognizable racial group, *Castaneda v. Partida*, 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977), and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact ... that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." *Avery v. Georgia*, 345 U.S. 559, 562, 73 S.Ct. 891, 892–93, 97 L.Ed. 1244 (1953). Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

*Id.* 476 U.S. at 96, 106 S.Ct. at 1722–23. All relevant circumstances are to be considered in determining whether the defendant

of a white defendant who challenged the *systematic* exclusion of blacks from the grand jury that indicted him and the petit jury that convicted him. The Court stated: "whatever his race, a criminal defendant has standing to challenge the system used to select his grand or petit jury, on the ground that it arbitrarily excludes from service the members of any race, and thereby denies him due process of law." *Peters*, 407 U.S. at 504, 92 S.Ct. at 2169.

**4.** *Powers* held that "the Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race," *Powers*, —— U.S. at ——, 111 S.Ct. at 1370, that individual jurors have the right not to be excluded from a petit jury on account of race, *id.*, and that a criminal defendant has standing to raise the third-party equal protection claims of jurors excluded on account of their race, *id.*, —— U.S. at ——, 111 S.Ct. at 1373.

**5.** *Teague* held that a new constitutional rule of criminal procedure will not apply retroactively unless it either (1) places certain conduct beyond the power of the criminal law-making authority to proscribe or (2) announces a watershed rule of criminal procedure that implicates the fundamental fairness of the trial and without which the likelihood of an accurate conviction is seriously diminished. *Teague*, 489 U.S. at 311–13, 109 S.Ct. at 1075–77.

Since the Rhode Island Supreme Court did not address the equal protection claim, petitioner also suggests that his conviction is not final and, therefore, that *Teague* cannot apply. However, the Rhode Island Supreme Court found, as we do, that petitioner failed to make a prima facie showing of discrimination. *See State v. Chakouian*, 537 A.2d at 413. It was therefore unnecessary for the court to address the equal protection argument.

**6.** We note nonetheless that even if the *Peters* proscription against discrimination in the petit jury empanelment *system* were held applicable to the prosecution's use of peremptory challenges to exclude two black persons from the petit jury, petitioner produced no evidence that blacks were *systematically* excluded from his petit jury, a showing required under *Peters*. *See Peters*, 407 U.S. at 504, 92 S.Ct. at 2169.

has made the requisite prima facie showing.[7] *Id.,* 476 U.S. at 96–97, 106 S.Ct. at 1723–42.

 Mixed questions of law and fact arising under 28 U.S.C. § 2254, as elsewhere, are entitled to *de novo* review. *Wellman v. Maine,* 962 F.2d 70 (1st Cir. 1992).[8] Under any standard of review, however, petitioner's total reliance on the objection asserted by the defense at trial as a sufficient prima facie showing of racial discrimination clearly fails the test articulated in *Batson. See Batson,* 476 U.S. at 96–97, 106 S.Ct. at 1723–24. The record reveals that petitioner interposed no objection until the Rhode Island prosecutor had exercised the State's sixth peremptory challenge and that four white jurors and one black juror were excused on the State's peremptory challenges before the second black juror was challenged. Most importantly, petitioner points to no evidence relating to the racial composition of the venire *or* the empaneled jury. Absent any evidence as to whether other black members of the venire were called and seated as jurors, the claim that the State's exercise of its peremptory challenges demonstrates a "pattern" of discrimination impermissibly depends on pure conjecture. Although *Powers* eliminates the *Batson* racial identity requirement, it in no way mitigates the defendant's burden to establish a prima facie case of discrimination.[9]

### B. *Evidentiary Hearing*

 The district court dismissed the section 2254 application without an evidentiary hearing. The burden was on the petitioner to show that he did not receive due process of law in the state courts for one or more of the reasons identified in 28 U.S.C.

7. For example, the Supreme Court has suggested that "a 'pattern' of strikes against black jurors included in the particular venire might give rise to an inference of discrimination" and that "the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose." *Batson,* 476 U.S. at 97, 106 S.Ct. at 1724.

8. Although the Supreme Court recently noted that it has "gradually come to treat as settled the

§ 2254(d). Having failed to do so, petitioner was not entitled to an evidentiary hearing. Accordingly, the district court judgment dismissing the application for habeas corpus relief under 28 U.S.C. § 2254 must be affirmed.

*The district court judgment is affirmed.*

rule that mixed constitutional questions are 'subject to plenary federal review' on habeas," the Court "implicitly questioned that standard, at least with respect to pure legal questions." *Wright v. West,* —— U.S. ——, ——, 112 S.Ct. 2482, 2489, 120 L.Ed.2d 225 (1992) (dicta).

9. There were two facially neutral grounds for excluding the second black juror. The record reveals that the juror not only had learned about the case through the media but had a close friend who had been the victim of a crime.