UNITED STATES of America, Appellee,

v.

Carlos BERGODERE, Defendant, Appellant.

No. 94–1520.

United States Court of Appeals, First Circuit.

Heard Nov. 8, 1994.

Decided Nov. 30, 1994.

David A.F. Lewis, for appellant.

Zechariah Chafee, Asst. U.S. Atty., with whom Sheldon Whitehouse, U.S. Atty., was on brief, for appellee.

Before SELYA, CYR, and STAHL, Circuit Judges.

SELYA, Circuit Judge.

This appeal raises questions of first impression in this circuit concerning how courts should apply the lessons of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and its progeny. After answering those questions, we conclude that the district court did not err in permitting the government to eliminate the lone African–American juror by means of a peremptory challenge. Since appellant's other assignments of error are equally unavailing, we affirm the judgment below.

## I. BACKGROUND

On March 9, 1993, a team of law enforcement officers executed a search warrant at the residence of defendant-appellant Carlos Bergodere in Providence, Rhode Island. When the officers arrived, only appellant and his wife, Cynthia Eastwood, were on the premises.

Appellant's apartment consisted of a kitchen, dining area, living room, and two bedrooms. During the search, the officers discovered three "browns" of heroin in the kitchen[1] and an operable .9 millimeter Luger pistol, fully loaded, under the seat cushions of the living room sofa. Several rounds of live ammunition, not corresponding to the Luger, were found in appellant's bedroom. The officers arrested appellant and seized additional quantities of heroin from his person.

In due season, a federal grand jury returned an indictment charging appellant with possession of a firearm after a previous felony conviction, *see* 18 U.S.C. § 922(g)(1), possession of heroin with intent to distribute, *see* 21 U.S.C. § 841(a)(1) & (b)(1)(C), and using a firearm during and in relation to a drug-trafficking crime, *see* 18 U.S.C. § 924(c)(1). Appellant entered a "not guilty" plea. In time, the court empaneled a jury. Contrary to the more common federal practice, the judge permitted the attorneys to conduct the voir dire.

In the course of jury selection, the following colloquy took place between the prosecutor and a black venireperson, Robert Goodrum.

**Mr. Chafee:** Mr. Goodrum, where do you work, sir?

**Mr. Goodrum:** I work in Newport. I'm area director for an adolescent outreach program.

**Mr. Chafee:** ... [A]re these young people who are having trouble in the community?

**Mr. Goodrum:** Yes, it varies from kids doing well, to kids in places like this.

\* \* \* \* \* \*

**Mr. Chafee:** Obviously you have a big heart for people in trouble. You're going to be asked to sit in judgment on somebody. Can you be fair and impartial to both the Government and the defendant in this case, listen to the evidence and call it ... according to the law given to you by Judge Lagueux?

**Mr. Goodrum:** Well, it will be a struggle but I know I can do it right, yeah.

Later on, defense counsel engaged in a colloquy with Mr. Goodrum.

**Mr. Gillan:** ... Why do you feel it would be a struggle for you to sit in judgment on this case?

**Mr. Goodrum:** I just have problems I guess with adults and drugs as I deal with kids and drugs.

\* \* \* \* \* \*

**Mr. Gillan:** And what if an adult is addicted to drugs. How does that make you feel?

---

**1.** A "brown" is a common unit of sale in the heroin trade. One brown comprises 50 glassine packets, each containing a dose of heroin. A brown has a street value of approximately $500.

**Mr. Goodrum:** ... I can deal with that. I mean, you know, when I think about people who might be soliciting I have problems.

**Mr. Gillan:** People might be soliciting children?

**Mr. Goodrum:** Right.

**Mr. Gillan:** Okay. but if that's not the evidence in this case then ... you won't have a problem with that?

**Mr. Goodrum:** Then I wouldn't have a problem with it.

The prosecution dismissed Goodrum from further service. Appellant objected. The district court upheld the strike, apparently finding that appellant failed to make a prima facie showing that the strike was motivated by a race-based animus. In the process, the judge specifically noted Goodrum's avowed doubts as to whether he could be an impartial juror.

A jury devoid of black members eventually convicted appellant on all counts. This appeal followed.

## II. THE PEREMPTORY CHALLENGE

Appellant's most striking argument concerns the prosecution's challenge of the juror, Goodrum. We begin by tackling that matter.

### A. *The Framework for Inquiry.*

The Supreme Court has recognized that in civil and criminal trials potential jurors, as well as litigants, have an equal protection right to jury selection procedures that are free from group stereotypes rooted in, and reflective of, historical prejudice. *See J.E.B. v. Alabama,* —— U.S. ——, ——, 114 S.Ct. 1419, 1421, 128 L.Ed.2d 89 (1994) (finding gender, like race, to be an unconstitutional proxy for juror competence and impartiality); *Powers v. Ohio,* 499 U.S. 400, 402, 111 S.Ct. 1364, 1366, 113 L.Ed.2d 411 (1990) (stating that racial discrimination in the selection of

jurors offends the dignity of persons and the integrity of courts).

In evaluating an equal protection challenge to a prosecutor's use of a peremptory strike, a three-part framework should be employed. *See Batson,* 476 U.S. at 96–98, 106 S.Ct. at 1722–24; *United States v. Perez,* 35 F.3d 632, 635 (1st Cir.1994). First, the defendant must make a prima facie showing of discrimination in the prosecutor's launching of the strike. *See Batson,* 476 U.S. at 96–97, 106 S.Ct. at 1722–23. If the defendant fulfills this requirement by establishing, say, a prima facie case of a racially driven impetus,[2] then the prosecutor must proffer a race-neutral explanation for having challenged the juror. *See id.* at 97, 106 S.Ct. at 1723; *see also United States v. Lewis,* 40 F.3d 1325, 1341–42 (1st Cir.1994). The prosecutor's burden is merely a burden of production, not a burden of persuasion. If the prosecutor complies, then, at the third and final stage, the district court must decide whether the defendant has carried the ultimate burden of proving that the strike constituted purposeful discrimination on the basis of race. *See Hernandez v. New York,* 500 U.S. 352, 358–59, 111 S.Ct. 1859, 1865–66, 114 L.Ed.2d 395 (1991) (discussing *Batson*); *Perez,* 35 F.3d at 635.

In making a *Batson* challenge, the defendant retains the burden of proof throughout. As part and parcel of this burden, he must carry the devoir of persuasion regarding the existence of a prima facie case of race-based discrimination in the jury selection process. *See Batson,* 476 U.S. at 96–97, 106 S.Ct. at 1722–23. The combination of factors needed to establish a prima facie case are limned in *Chakouian v. Moran,* 975 F.2d 931, 933 (1st Cir.1992). Initially, the defendant must demonstrate that the prosecution's challenge was directed at a member of a cognizable racial group.[3] *See Batson,* 476 U.S. at 96, 106 S.Ct. at 1722; *Chakouian,* 975 F.2d at 933. Next, the defendant must show

---

2. The three-part framework is the same for gender as for race. *See J.E.B.,* —— U.S. at ——, 114 S.Ct. at 1429.

3. The defendant and the challenged juror need not be members of the same race. *See Powers,*

499 U.S. at 409–10, 111 S.Ct. at 1369–70 (eliminating *Batson*'s "racial identity" requirement); *Chakouian,* 975 F.2d at 934. Thus, the fact that appellant is not himself of African–American ancestry does not end our inquiry.

that the challenge was peremptory rather than for cause, thus bringing into play the Supreme Court's admonition that "peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" *Batson,* 476 U.S. at 96, 106 S.Ct. at 1723 (quoting *Avery v. Georgia,* 345 U.S. 559, 562, 73 S.Ct. 891, 892, 97 L.Ed. 1244 (1953)). Finally, the defendant must show circumstances sufficient, when combined with the two antecedent facts, to raise an inference that the prosecutor struck the venireperson on account of race. *See id.* While the prima facie case requirement is not onerous, neither can it be taken for granted.

### B.  *Standard of Review.*

This court has yet to articulate the appropriate standard against which to test a trial court's ruling that a defendant has—or has not—made out a prima facie case in connection with a *Batson* challenge. We do so today.

■ A careful reading of *Batson* convinces us that, although this determination can be characterized as a mixed question of law and fact, it is fact-sensitive, and, therefore, should be reviewed under the familiar clear-error standard. *See generally In re Howard,* 996 F.2d 1320, 1328 (1st Cir.1993) ("The standard of review applicable to mixed questions usually depends upon where they fall along a degree-of-deference continuum: the more fact-dominated the question, the more likely it is that the trier's resolution of it will be accepted unless shown to be clearly erroneous."). Our holding is consistent with the Supreme Court's expression of confidence that trial judges. experienced in conducting and supervising voir dire, will likely be able to identify prima facie cases of discrimination. *See Batson,* 476 U.S. at 97, 106 S.Ct. at 1723. Our holding is also consistent with the decisions of the five other courts of appeals that thus far have confronted the same standard-of-review problem and resolved it in like manner. *See United States v. Vasquez–Lopez,* 22 F.3d 900, 901 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 239, 130 L.Ed.2d 162 (1994); *United States v. Branch,* 989 F.2d 752, 755 (5th Cir.), *cert. denied,* ——

U.S. ——, 113 S.Ct. 3060, 125 L.Ed.2d 742 (1993); *United States v. Casper,* 956 F.2d 416, 418 (3d Cir.1992); *United States v. Moore,* 895 F.2d 484, 485 (8th Cir.1990); *United States v. Grandison,* 885 F.2d 143, 146 (4th Cir.1989), *cert. denied,* 495 U.S. 934, 110 S.Ct. 2178, 109 L.Ed.2d 507 (1990).

### C.  *Analysis.*

■ We detect no clear error in the district court's rejection of appellant's proffered prima facie case. Although the striking of the only juror of a particular race can be sufficient to ground a permissive inference of discrimination in certain circumstances, *see, e.g., United States v. Roan Eagle,* 867 F.2d 436, 441 (8th Cir.), *cert. denied,* 490 U.S. 1028, 109 S.Ct. 1764, 104 L.Ed.2d 199 (1989), such a strike does not raise a necessary inference of discrimination, *see Vasquez–Lopez,* 22 F.3d at 902. Phrased another way, the mere fact that the prosecutor challenges the only juror of a particular race, without more, does not automatically give rise to an inescapable inference of discriminatory intent. A defendant who advances a *Batson* argument ordinarily should "come forward with facts, not just numbers alone." *Moore,* 895 F.2d at 485; *accord United States v. Dawn,* 897 F.2d 1444, 1448 (8th Cir.), *cert. denied,* 498 U.S. 960, 111 S.Ct. 389, 112 L.Ed.2d 400 (1990).

■ Here, the defendant provided nothing in the way of either direct or circumstantial proof to buttress the naked statistic on which he relies. This failure is all the more glaring because the circumstances attendant to the Goodrum strike point away from an inference of discrimination. This case involves a single strike, not multiple strikes. The government's other peremptories were exercised in an unexceptionable manner. Appellant essayed no proffer showing that either the particular prosecutor or the prosecutor's office regularly engaged in a pattern of suspicious strikes. The prosecutor's questions and statements during voir dire do not suggest racial discrimination, but, instead, seem to reflect a concern with the prospective juror's ability to reach a fair and impartial verdict. This is of considerable importance, as the Court has directed trial judges in such

circumstances to examine "the prosecutor's questions and statements during voir dire" for signs of purposeful discrimination. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723.

The capstone, of course, is that the colloquy between the prospective juror and the two lawyers reflects a legitimate, nondiscriminatory reason why conscientious counsel might desire to exclude the juror from further service. After all, Goodrum admitted that it would "be a struggle" to achieve impartiality, and that he had a "problem" with cases involving "adults and drugs." The prosecutor, understandably concerned that the talesman "ha[d] a big heart for people in trouble," had no obligation either to ignore these comments or to accept at face value Goodrum's prediction that, in the end, he could put aside his "problem" and "do it right."

■ Voir dire represents not only the introduction of potential jurors to the factual and legal issues to be aired at trial, *see Powers*, 499 U.S. at 412, 111 S.Ct. at 1371, but also the lawyers' introduction to the venire. Its core purpose is to provide a firm foundation for ferreting out bias. A healthy byproduct is that a careful voir dire eliminates any need to rely on stereotypes. *See J.E.B.*, ── U.S. at ──, 114 S.Ct. at 1429; *United States v. Whitt*, 718 F.2d 1494, 1497 (10th Cir.1983). Withal, the line between discriminatory and nondiscriminatory strikes is not always easily drawn. As courts labor to plot it, trial lawyers are entitled, at a bare minimum, to a bit of breathing room. In the end, jury selection is not an exact science. Its watchwords are judgment, flexibility, and discretion. Although attorneys cannot be permitted to exercise peremptory challenges based on race or gender, they are not prohib-

ited altogether from striking venirepersons of a particular race or gender.

■ We will not paint the lily. Evaluative judgments concerning juror suitability are often made partially in response to nuance, demeanor, body language, and a host of kindred considerations. Thus, the trial judge, who sees and hears both the prospective juror and the opposing attorneys in action, is in the best position to pass judgment on counsel's motives. Recognizing that we ought to cede considerable deference to a district judge who observes the voir dire at first hand, *see Batson*, 476 U.S. at 97, 106 S.Ct. at 1723, we refuse to second-guess Judge Lagueux's implicit finding that the prosecutor struck Goodrum because of doubts about Goodrum's "big heart" and impending "struggle," rather than for some evil purpose. It follows that the court did not err in finding that appellant failed to establish a prima facie case of race-based discrimination in the prosecution's use of its peremptory challenges.[4]

## III. OTHER ASSIGNMENTS OF ERROR

Appellant advances three additional assignments of error. We consider two of them, both of which relate to matters of evidentiary sufficiency.[5] Appellant's final assignment of error raises the boggart of ineffective assistance of trial counsel. This claim was not asserted in the district court and is not properly before us on direct appeal. *See United States v. Mala*, 7 F.3d 1058, 1063 (1st Cir.1993) (holding that absent extraordinary circumstances, fact-specific claims asserting ineffective assistance of counsel are not cognizable on direct appeal; collecting cases to like effect), *cert. denied*, ── U.S. ──, 114 S.Ct. 1839, 128 L.Ed.2d 466 (1994).

---

4. Because appellant failed to make the requisite first-stage showing, the burden never shifted to the prosecutor to articulate a race-neutral explanation for the strike. Even so, it might have been wise for the judge to have asked the prosecutor to proffer an explicit statement of the basis for the strike, if only to confirm the judge's intuition and flesh out the record on appeal. *See United States v. Johnson*, 873 F.2d 1137, 1140 n. 3 (8th Cir.1989), *cert. denied*, 498 U.S. 924, 111 S.Ct. 304, 112 L.Ed.2d 257 (1990).

5. The jury convicted appellant on three counts, namely, possession of a firearm after a previous felony conviction (count 1), possession of heroin with intent to distribute (count 2), and using a firearm in relation to a drug-trafficking crime (count 3). In the district court, appellant unsuccessfully sought judgment of acquittal on all three counts. On appeal, however, he challenges the sufficiency of the evidence only in regard to counts 2 and 3.

### A. *Standard of Review.*

The path that this court traverses to review sufficiency challenges is well worn. We inspect the evidence in the light most friendly to the verdict, indulging all reasonable inferences in the verdict's favor and resolving all credibility disputes in the same way. We then determine whether a rational jury could find guilt beyond a reasonable doubt. *See, e.g., United States v. Echeverri,* 982 F.2d 675, 677 (1st Cir.1993); *United States v. Maraj,* 947 F.2d 520, 522–23 (1st Cir.1991); *United States v. Boylan,* 898 F.2d 230, 243 (1st Cir.), *cert. denied,* 498 U.S. 849, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990). The conviction stands so long as the guilty verdict comports with "a plausible rendition of the record." *United States v. Ortiz,* 966 F.2d 707, 711 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1005, 122 L.Ed.2d 154 (1993).

### B. *Count 2.*

To sustain a conviction under 21 U.S.C. § 841(a)(1), the prosecution must establish beyond a reasonable doubt that the defendant knowingly or intentionally possessed a controlled substance with intent to distribute it. *See, e.g., United States v. de Jesus–Rios,* 990 F.2d 672, 680 (1st Cir.1993). The element of possession can be satisfied by evidence that demonstrates either actual or constructive possession. *See United States v. Gomez–Villamizar,* 981 F.2d 621, 624 (1st Cir.1992).

Appellant does not seriously contest the element of possession, but, instead, concentrates his fire on the element of specific intent. He alleges that the evidence, taken most congenially to the government's case, merely shows that he possessed heroin (say, for personal consumption), not that he intended to distribute it. We read the record differently. An intent to distribute drugs does not demand proof by direct evidence but can be made manifest through circumstantial evidence alone. *See Echeverri,* 982 F.2d at 678; *United States v. Desmarais,* 938 F.2d 347, 352 (1st Cir.1991). In this connection, we have long recognized that factors such as the quantity and purity of the drugs confiscated by the authorities can support an inference of intent to distribute. *See,*

*e.g., Echeverri,* 982 F.2d at 678; *United States v. Ocampo–Guarin,* 968 F.2d 1406, 1410 (1st Cir.1992); *United States v. Batista–Polanco,* 927 F.2d 14, 18–19 (1st Cir.1991).

In this case, the evidence easily sustained a finding of intent to distribute. The officers seized three browns from appellant's kitchen and eleven glassines from his pocket. Thus, both the quantity of heroin and the method of packaging militated toward a conclusion that appellant was himself a dealer. The total value of the heroin seized—over $1,500—suggested the same conclusion. Furthermore, an experienced detective testified that, in his expert opinion, the quantity, packaging, and value of the heroin indicated that it was intended for distribution.

To be sure, this evidence was not ironclad. As appellant notes, it did not rule out the *possibility* that he possessed the heroin for personal consumption. But the law requires only that the evidence, fairly viewed, be capable of supporting the jury's verdict, not that it exclude every hypothesis consistent with a claim of innocence. *See Echeverri,* 982 F.2d at 678; *Boylan,* 898 F.2d at 243. Accordingly, we find no infirmity in appellant's conviction for possession of heroin with intent to distribute.

### C. *Count 3.*

The final portion of appellant's sufficiency challenge concerns the charged violation of 18 U.S.C. § 924(c)(1). It is well settled that, under this statute, the emphasis is on a firearm's availability for use, regardless of whether the weapon is actually used in the commission of a drug-trafficking crime. *See United States v. Paulino,* 13 F.3d 20, 26 (1st Cir.1994); *United States v. Hadfield,* 918 F.2d 987, 998 (1st Cir.1990) (collecting cases), *cert. denied,* 500 U.S. 936, 111 S.Ct. 2062, 114 L.Ed.2d 466 (1991). The instant case falls squarely within the boundaries established in *Hadfield,* a case in which we stated that, under section 924(c), the principal inquiry should focus on the presence or absence of a "facilitative nexus" between the charged offense and the discovered firearm. *See Hadfield,* 918 F.2d at 998. In applying *Hadfield,* an inquiring court's primary con-

cern is not whether the gun was "instantly available" or "exclusively dedicated to the narcotics trade," but whether it was "available for use" in that regard. *Id.; accord United States v. Castro–Lara,* 970 F.2d 976, 983 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2935, 124 L.Ed.2d 684 (1993). Under this test, if an operable firearm is found in close proximity to a room or rooms in which drug distribution, processing, or storage occurs, then the factfinder ordinarily is free to conclude that a defendant having evident ties to the premises and the drugs knew about the gun and intended it to be available for use in relation to the narcotics enterprise. *See Hadfield,* 918 F.2d at 998.

 The authorities arrested appellant in his apartment. From the quantity of heroin found on the premises the jury could reasonably conclude that the dwelling served as a storehouse for at least some of appellant's heroin or, perhaps, a retail sales outlet. *See, e.g., Echeverri,* 982 F.2d at 678. As a lessee of the apartment and a person residing there, appellant had a significant degree of control over the contents of the premises. *See id.* Within wide limits, he had the ability to determine who and what could enter his place of abode. Officers located the weapon under the seat cushions of the living room couch—proximate to the drugs and easily accessible to an individual who knew its whereabouts. Of pivotal importance, the gun was fully loaded. The police found additional ammunition in appellant's bedroom which, although, of a different caliber, indicated that appellant was no stranger to firearms. On this basis, a rational juror surely could conclude that appellant kept a loaded gun handy to protect his heroin supply. As we have said before, "[t]he law is not so struthious as to compel a criminal jury to ignore that which is perfectly obvious." *United States v. Ingraham,* 832 F.2d 229, 240 (1st Cir.1987), *cert. denied,* 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988).

We recognize that the government's case was not open-and-shut. For example, the proof at trial established that appellant's landlord, Felipe Moronto, actually owned the pistol, and appellant makes much of this fact. We agree that this datum is relevant—but it is hardly determinative. What matters is that the totality of the evidence suffices to permit—and in our estimation to support quite amply—a finding that a facilitative nexus existed between the weapon and appellant's drug-distribution activities. *See, e.g., United States v. Reyes–Mercado,* 22 F.3d 363, 367 (1st Cir.1994); *Paulino,* 13 F.3d at 26; *Castro–Lara,* 970 F.2d at 983. Therefore, the claim of evidentiary insufficiency fails.

## IV. CONCLUSION

We need go no further. For aught that appears, appellant was fairly tried and justly convicted before a lawfully constituted jury. For the reasons stated herein, we affirm the judgment of conviction, without prejudice, however, to appellant's right to pursue his ineffective assistance of counsel claim at a proper time and in a proper venue.

*It is so ordered.*