# United States Court of Appeals
## For the First Circuit

No. 07-1244

UNITED STATES OF AMERICA,

Appellee,

v.

MARGARET GIROUARD,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Lynch, Circuit Judge,

Stahl, Senior Circuit Judge,

and Howard, Circuit Judge.

Robert L. Sheketoff for appellant.
Thomas E. Kanwit, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney and Randall E. Kromm,
Assistant United States Attorney, were on brief for appellee.

March 28, 2008

**HOWARD**, **Circuit Judge**.  Margaret Girouard was convicted by a jury of one count of consumer product tampering in violation of 18 U.S.C. § 1365.  On appeal, she claims the empanelment of the jury that convicted her was tainted by religious discrimination in violation of the Constitution.  The district court implicitly found that Girouard had failed to establish a prima facie case that the prosecutor's peremptory strike was motivated by discriminatory animus.  Finding no clear error in this determination, we affirm the conviction.

1.      **Batson**

In order to frame the facts properly, we first examine the analytical and procedural framework imposed on jury selection by the Supreme Court in Batson v. Kentucky, 476 U.S. 79 (1986).  That case held that the defendant's equal protection rights under the Fourteenth Amendment were violated where jury selection at his trial had been affected by invidious racial discrimination.[1]  Although the scope of Batson has been broadened by subsequent decisions,[2] the basic framework for challenging jury composition

---

[1]Batson applies to proceedings in federal courts under the Fifth Amendment's Due Process Clause.  See Edmonson v. Leesville Concrete Co., 500 U.S. 614, 616 (1991) (citing Bolling v. Sharpe, 347 U.S. 497 (1954)).

[2]Powers v. Ohio, 499 U.S. 400 (1991) held that the race of the litigant challenging the strike was irrelevant.  J.E.B. v. Alabama ex rel. T.B., 511 U.S. 127 (1994), extended the Batson framework to claims of gender discrimination in jury selection.  Edmonson, 500 U.S. 614, applied Batson to jury selection in civil cases.  Georgia v. McCollum, 505 U.S. 42 (1992) held that Batson governed

has remained unchanged. See Snyder v. Louisiana, No. 06-10119, 2008 LEXIS 2708 (U.S. Mar. 19, 2008) (applying Batson).

We have never held that Batson applies to cases of religious discrimination in jury selection.[3]  Even assuming, arguendo, that Batson does apply to claims of religious discrimination, we find no clear error in the district court's action.  It is therefore unnecessary to resolve the open question of whether Batson does indeed apply to religious discrimination.

The Batson framework requires three steps.  See Snyder, at * 10 (referring specifically to race discrimination).

> First, the defendant must make a prima facie showing of discrimination in the prosecutor's launching of the strike.  If the defendant fulfills this requirement by establishing, say, a prima facie case of a racially driven impetus, then the prosecutor must proffer a race-neutral explanation for having challenged the juror.  If the prosecutor complies, then, at the third and final stage, the district court must decide whether the defendant has carried the ultimate burden of proving that

peremptory strikes by a criminal defendant.

[3]The Supreme Court has so far declined to resolve this issue. See Davis v. Minnesota, 511 U.S. 1115, 1115 (1994) (denial of certiorari in a case raising the issue).  Some courts have made the distinction between one's religious affiliation and one's religious beliefs.  See United States v. Brown, 352 F.3d 654, 669 (2d Cir. 2003); United States v. DeJesus, 347 F.3d 500, 511 (3d Cir. 2003) ("The distinction drawn by the District Court between a strike motivated by religious beliefs and one motivated by religious affiliation is valid and proper."); United States v. Stafford, 136 F.3d 1109, 1114 (7th Cir. 1998) (noting in dicta that it might be "necessary to distinguish among religious affiliation, a religion's general tenets, and a specific religious belief").

> the strike constituted purposeful discrimination on the basis of race.

United States v. Bergodere, 40 F.3d 512, 515 (1st Cir. 1994) (citing Batson, 476 U.S. at 96-97) (internal citations omitted). The three-step process attempts to balance the time-honored principle of unfettered exercise of the peremptory challenge with a need to conform trial process to the Constitution. The opponent of a strike bears the burden of proof throughout the inquiry. Id.

**2.     Facts**

We set out only the most salient aspects of Girouard's criminal behavior, taking them in the light most favorable to the verdict. United States v. Turner, 501 F.3d 59, 63 (1st Cir. 2007). We then treat jury selection in more detail. Girouard was a nurse with the veterans' administration ("VA"). She pricked or cut transdermal patches through their wrapping, thereby removing some of the narcotics they contained. She left the patches in the drug cart for later use on patients.[4] A prick or cut on the ventral side of the patch risked an overdose when the patch was applied to a patient; in any event, extraction of the medication rendered the patches less effective at managing pain. When the tampering was discovered Girouard was arrested. The superseding indictment charged her with nine counts of obtaining controlled substances by

---

[4]We presume that she did this because outright theft of the patches would have been readily detected by the VA's protocols for control of narcotics.

subterfuge in violation of 18 U.S.C. § 843(a)(3), one count of making false statements on her application to work at the VA in violation of 18 U.S.C. § 1001, and one count of consumer product tampering in violation of 18 U.S.C. § 1365(a).[5]  Girouard pled guilty to the other ten counts, proceeding to trial only on the consumer product tampering charge.

The district court made introductory remarks to the venire, including a statement that the trial was not expected to last into the next week.  Then the court heard venirepersons with questions or conflicts individually at sidebar.  Two of the venirepersons expressed concern that the trial might run into the next week and conflict with a Jewish high holiday.[6]  The first of these was a clinical psychologist, and the second was an attorney who had once "had a case against" the United States Attorney's

---

[5]Section 1365 provides criminal penalties for
> [w]hoever, with reckless disregard for the risk that another person will be placed in danger of death or bodily injury and under circumstances manifesting extreme indifference to such risk, tampers with any consumer product that affects interstate or foreign commerce, or the labeling of, or container for, any such product, or attempts to do so . . . .

[6]Although we cannot be sure, we refer to these two as Jewish.  We note also that other venirepersons might have been Jewish as well, but declined to mention the holiday at sidebar because they were not as observant, because they believed the district court's assurance that the trial would not last that long, or for some other reason.

office and indicated that she "might" know one of the witnesses. The district court assured both that the court would honor the holiday in the unlikely event the jury's service was required into that week.

When the time came to seat the jury, the prosecutor exercised four peremptory challenges relevant here. First, the prosecutor struck the first Jewish juror described above. Defense counsel did not object. Next, the prosecutor struck a woman who was apparently Asian-American. Defense counsel objected that the strike was based on racial discrimination, invoking the familiar Batson framework for handling such challenges. The prosecutor, required by the district court to give a race-neutral explanation for the strike, said he struck this juror because she was a public school teacher who lived in inner-city Boston. The district court accepted this explanation. Third, the prosecutor struck an African-American man. This time the district court, sua sponte, asked the prosecutor why. The prosecutor explained that the man had said he spent most of his time in service activities related to his church. The district court rejected the proffered reason as impermissibly based on the man's religion. Notwithstanding the prosecutor's explanation that it was the degree of the man's involvement with his church that motivated the strike, and not the

man's particular religion,[7] the district court did not allow the strike and seated the juror over the prosecutor's objection. Fourth and most importantly for present purposes, the prosecutor struck the second Jewish juror described above. Defense counsel objected, pointing out that both self-identified Jewish venirepersons had been struck. The district court, without asking the prosecution to justify the strike, replied, "[O]ne can think of many reasons why we wouldn't want an attorney on a criminal case. And I'm not leery about the principle of peremptory challenges. I'm simply trying to enforce Batson, and I am. So your objection's overruled." The strike was therefore upheld, the trial conducted, and Girouard convicted. The only issue in this appeal is whether the district court erroneously applied Batson to the strike of the second Jewish juror.

3.    **Discussion**

Girouard claims that the district court erred when it declined to demand from the prosecutor a nondiscriminatory reason for striking the second Jewish venireperson. Girouard styles that rejection as a refusal to treat religious discrimination in jury selection under the Batson framework, but we disagree. We

---

[7]Indeed, as the prosecutor pointed out, the man had not even revealed his religious affiliation.

interpret the district court's action as an implicit rejection of Girouard's prima facie case of a Batson violation.[8]

We review preserved Batson claims for clear error, including cases in which the trial court finds no prima facie case of discrimination. Brewer v. Marshall, 119 F.3d 993, 1004 (1st Cir. 1997). The government urges us to apply plain error review to this case, on the ground that the objection to the second Jewish juror was not sufficiently clear for the district court to have treated the question of discrimination by virtue of religion. We do apply plain error review to unpreserved Batson claims, see United States v. Pulgarin, 955 F.2d 1, 2 (1st Cir. 1992), but that is irrelevant here. From the record it appears that the district court was aware of the specific basis for the objection. The defense rested its Batson objection explicitly on the fact that the two self-identified Jewish jurors had been struck. Indeed, the court had seated one juror already over the prosecutor's strike based on the man's level of religious involvement. Regardless of whether that action was required or warranted, it does show that the district court was cognizant of possible discrimination on the basis of religion in jury selection. In any event, we have never held that a Batson objection to a particular strike is insufficient

---

[8]This is in keeping with past practice. See United States v. Bergodere, 40 F.3d 512, 517 (1st Cir. 1994) (analyzing judge's refusal to ask prosecutor for a race-neutral explanation as an implicit ruling that defense had failed to make a prima facie case under Batson).

to preserve the issue as to that strike for clear error review on appeal.

In order to establish a prima facie case of discrimination, "the moving party must 'raise an inference that the prosecutor used [peremptory challenges] to exclude the veniremen from the petit jury' because of their membership in a protected class." Aspen v. Bissonette, 480 F.3d 571, 574 (1st Cir. 2007) (quoting Batson, 476 U.S. at 96) (alteration in original). Aspen also notes the trial judge's wide latitude to consider all relevant circumstances. Id. ("The judge may consider all 'relevant circumstances' in making this determination." (quoting Batson, 476 U.S. at 96)). This approach was recently reaffirmed by the Supreme Court. See Snyder, at *11. Indeed, Snyder goes further and requires the consideration of all circumstances bearing on the issue. Id. ("[I]n considering a Batson objection, or in reviewing a ruling claimed to be Batson error, all of the circumstances that bear upon the issue of racial animosity must be considered." (citing Miller-El v. Dretke, 545 U.S. 231, 239 (2005))).[9] We follow this approach of looking at all relevant circumstances even in cases where we are reviewing a district court's finding that no prima facie case has been made. See Bergodere, 40 F.3d at 516-17

---

[9]Snyder's mandate undoubtedly applies to other kinds of discrimination that fall under Batson. Therefore, because we assume for the purposes of this opinion, that Batson applies to religious discrimination, this statement in Snyder would apply to religious discrimination as well.

(examining, in assessing whether a prima facie case was made, surrounding circumstances such as: the number of strikes involved in the objected-to conduct; the nature of the prosecutor's other strikes; and, as the "capstone," the presence of an alternative, race-neutral explanation for the strike).

The burden imposed on the opponent of the strike is "not substantial." Id. But "neither can it be taken for granted." Bergodere, 40 F.3d at 516. The Supreme Court has held that requiring the opponent of the strike to prove it "more likely than not" that the strike was discriminatory offends the Constitution. Johnson v. California, 545 U.S. 162, 170 (2005). In Aspen, we held that merely requiring the opponent of the strike to demonstrate at the first step that discrimination was the "likely" reason for the strike likewise misreads Batson and sets the bar too high. Aspen, 480 F.3d at 574.

Girouard objected to the second strike only on the ground that both of the self-identified Jewish members of the venire had been struck. We have cautioned those who object to peremptory strikes that they should "come forward with facts, not just numbers alone." Bergodere, 40 F.3d at 516.[10] But we have never decided

_____

[10]Bergodere is quite similar to this case. There, the district court responded to a Batson challenge by itself supplying a race-neutral reason for the strike instead of demanding one from the prosecution. We saw this as an implicit rejection of the defense's prima facie case and found no error. On review, we examined the circumstances surrounding the strike in order to glean whether there was clear error in this finding of no prima facie case.

whether mere numbers may establish a prima facie case. See Brewer, 119 F.3d at 1005. In any case, it is clear that even if bare statistics can make out a prima facie case, that does not mean that any statistical proffer will satisfy the burden.

A fundamental problem with Girouard's prima facie case leaves us unable to find clear error. Even Girouard's bare numerical argument is incomplete. No effort was made to discern or quantify the number of Jewish people in the venire. The objection at trial relied solely on the incomplete information provided by voluntary self-identification. It was Girouard's burden to bring forward other reasons and to flesh out the record with regard to the numerical claim. Here, we simply do not have the information to evaluate even the bare numerical assertion that all, or most, Jewish persons in the venire were struck. This lack of information is one of the essential problems with applying Batson to religious groups. Compared to race and gender, religious affiliation is relatively hard to discern from appearances.[11] Without even baseline statistics of how many Jewish people were in the venire and how many ended up on the jury, we cannot say on this record that the district court clearly erred when it found that two

_____

[11]Indeed, even in the context of racial discrimination, Batson challenges often highlight uncertainty over the racial identity of venirepersons. See Caldwell, 159 F.3d at 645 n.7 (noting "some question about whether this juror was indeed African-American"); Brewer, 119 F.3d at 996 n.4 (noting "some dispute between the court and defense counsel as to whether [a] juror was black or Hispanic").

strikes directed at members of one religion failed to raise a prima facie case. In some cases, the makeup of the remaining venire might be critical to an assessment of whether a prima facie case was made. See United States v. Escobar-de Jesus, 187 F.3d 164, 164-65 (1st Cir. 1999) (no prima facie case where two black venirepersons were struck but six or seven remained).[12]

**4.      Conclusion**

We find no clear error in the district court's implicit finding that the defense failed to raise a prima facie case of discrimination in jury selection. The verdict of the district court is **affirmed**.

---

[12]We are mindful of the standard of review. We do not imply that a prima facie case would have been impossible to find on the scant facts before us. We are simply unable, without the rest of the statistical picture, to say the district court clearly erred.