**Not for Publication in)West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 08-1031

JAY ODUNUKWE,

Plaintiff, Appellant,

v.

BANK OF AMERICA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nancy Gertner, U.S. District Judge]

Before

Torruella, Boudin and Howard,
Circuit Judges.

Jay Odunukwe on brief pro se.
Donn A. Randall, Carol E. Kamm, Matthew A. Kane and Bulkley, Richardson and Gelinas, LLP on brief for appellee.

July 1, 2009

**Per Curiam**.  Jay Odunukwe appeals from a jury verdict in favor of Bank of America ("the Bank").  We affirm.

                                    I.

Odunukwe, an African-American originally from Nigeria, sued the Bank after employees of its Medway, Massachusetts branch refused to cash a check that he presented.  Odunukwe testified that he was not a client of the Bank and that, in attempting to cash the check drawn on his sister's Bank account, he provided two forms of identification: a Massachusetts driver's license and an American Express credit card.  Bank employees testified that Odunukwe presented only one acceptable form of identification, i.e., the driver's license, and that Odunukwe never proffered any credit card.

After Odunukwe was refused service at the Bank's Medway branch, Odunukwe drove to the Bank's Medfield branch, where he was permitted to cash the check.  According to Odunukwe, he presented the same two forms of identification that had been rejected at the Medway branch.  Bank employees from the Medfield branch testified that he presented only his driver's license and no credit card, but that they had made a one-time-only exception to the otherwise applicable "two forms of identification" policy, based, in part, on the fact that Odunukwe was also depositing a check into his sister's account that was greater in value than the $1100 check he was cashing -- a fact not related by Odunukwe to the Medway branch.

After a one day trial, the jury returned a verdict in favor of the Bank.

## II.

A.        The Batson challenge

Odunukwe alleges that the district court failed to handle the Bank's peremptory challenges in accordance with Batson v. Kentucky, 476 U.S. 79 (1986). See also Edmonson v. Leesville Concrete Co., 500 U.S. 614 (1991) (applying Batson to a civil case). He complains that the Bank used all three of its peremptory challenges to strike black jurors and that the court wrongfully failed to require the Bank to proffer a race-neutral explanation for its strikes.

A Batson challenge, such as the one alleged here based on race, involves a three step process. First, the one contesting a peremptory strike must make a prima facie showing that the strike is driven by racial discrimination. Once a prima facie showing is made, the author of the strike must proffer a race-neutral explanation for the challenge. Finally, if a race-neutral explanation is provided, the court must decide whether the one contesting the peremptory strike has carried the ultimate burden of proving that the strike constituted purposeful racial discrimination. See United States v. Bergodere, 40 F.3d 512, 515 (1st Cir. 1994) (outlining the framework for a Batson challenge).

-3-

The district court made a determination that Odunukwe failed to make a prima facie showing that the Bank's strikes were driven by racial animus. Contrary to Odunukwe's contention that we apply *de novo* review to the district court's determination that Odunukwe failed to make a prima facie case, the caselaw holds that we review that determination for clear error. United States v. Girouard, 521 F.3d 110, 112 (1st Cir. 2008); United States v. Bergodere, 40 F.3d at 516. There was no clear error here.

First of all, counsel's objections to the Bank's peremptory challenges were rather tentative as counsel himself was uncertain if the jurors that the Bank was striking were persons of color and his objections were phrased as contingencies. Despite the tentativeness of Odunukwe's claim that the jurors whom the Bank was striking were persons of color, the court attempted to determine the racial make-up of the jury venire by asking the law clerk to report.

Based on this report, it appears that five of the fourteen jurors in the venire -- Jurors 1, 2, 4, 11, and 12 -- were persons of color. On appeal, Odunukwe argues that all three of the Bank's peremptory challenges -- to Jurors 1, 7, and 12 -- struck persons of color. However, there is no record support for the claim that Juror 7 was a person of color. Juror 11 was subsequently excused on hardship grounds and was replaced by a juror of unknown race. The two remaining persons of color in the

venire -- Jurors 2 and 4 -- served on Odunukwe's petit jury of eight (contrary to Odunukwe's claim on appeal that only one person of color served on his jury).

Moreover, one who objects to peremptory strikes ought to "come forward with facts, not just numbers alone," United States v. Bergodere, 40 F.3d at 516 (citation omitted). Odunukwe relies solely on the number of strikes against persons of color and "[i]t is at least questionable whether this evidence is adequate to surpass the prima facie hurdle." Aspen v. Bissonnette, 480 F.3d 571, 577 (1st Cir.), cert. denied, 128 S. Ct. 330 (2007).

In reviewing a district court's finding that no prima facie case was made, we look at all relevant circumstances, examining both numeric and non-numeric forms of evidence. Id. "Relevant numeric evidence includes the percentage of strikes directed against members of a particular group, the percentage of a particular group removed from the venire by the challenged strikes, and a comparison of the percentage of a group's representation in the venire to its representation on the jury." Id. (citations omitted). It appears that persons of color constituted approximately 35.7% (5 out of 14) of the total venire; the Bank used 66% of its strikes (2 out of 3) to strike persons of color and these two strikes constituted 40% (2 out of 5) of the total number of persons of color in the venire. After the conclusion of the Bank's peremptory strikes, three persons of color

-5-

were seated in Odunukwe's petit jury of eight, resulting in a petit jury with a 37.5% minority composition, higher than the minority percentage existing in the original venire. Even after Juror 11 was excused based on hardship, an exclusion which cannot be charged to any peremptory challenge, the minority percentage of Odunukwe's petit jury was at least two of eight jurors (since the race of the replacement juror is unknown) or 25%.

We also consider non-numeric forms of evidence, including "the striking party's questions and statements during the voir dire, whether the striking party had unused peremptory challenges through which he or she could have eliminated more members of the allegedly targeted group, apparent non-discriminatory reasons for striking potential jurors based on their voir dire answers, and whether similarly situated jurors from outside the allegedly targeted group were permitted to serve." Id. Odunukwe does not point to any non-numeric form of evidence in support of his Batson claim. For example, the Bank's counsel made no statements during voir dire suggesting any improper racially-based motive for its challenges. The absence of any non-numeric evidence supports the conclusion that no discriminatory motive infected the Bank's peremptory challenges.

Accordingly, the district court's determination that Odunukwe failed to make a prima facie showing that the Bank's strikes were driven by racial animus was not clearly erroneous. To

the extent that Odunukwe's brief suggests that the Bank also impermissibly used its peremptory challenges to strike male jurors, there was no challenge below to any of the strikes based on gender. Therefore, we need not address this rather vaporous contention sporadically threaded through his brief.

B.        Jury Instruction

Odunukwe contends that the district court misinstructed the jury on his § 1981 claim.  We reject this contention.

Section 1981 prohibits racial discrimination in the making and enforcing of contracts.  Our caselaw recites that "[t]o state a claim under this statute, a plaintiff must show (1) that he is a member of a racial minority, (2) that the defendant discriminated against him on the basis of his race, and (3) that the discrimination implicated one or more of the activities enumerated in the statute."  Garrett v. Tandy Corp., 295 F.3d 94, 98 (1st Cir. 2002).  The only contested issue here is the second element, i.e., whether the Bank discriminated against Odunukwe on the basis of his race.

On appeal, Odunukwe argues, as he did below, that the district court failed to recognize that the elements to prove a case of racial discrimination involving a commercial establishment differ from the elements of a claim of racial discrimination in employment matters.  The jury instruction reflected this misunderstanding, says Odunukwe.

He relies on the 6th Circuit's opinion in Christian v. Wal-Mart Stores, Inc., 252 F.3d 862 (6th Cir. 2001), which, in turn, relied on the district court case of Callwood v. Dave & Buster's, Inc., 98 F.Supp.2d 694 (D. Md. 2000). In cases involving allegations of racial discrimination in the services received from a commercial establishment, these courts allow for alternative methods to demonstrate an inference of intentional discrimination, either by identifying similarly situated persons outside the protected class who were not denied the right to enter into or enjoy the benefits or privileges of the contractual relationship or, in a situation in which a plaintiff cannot identify other similarly situated persons, by demonstrating the receipt of "hostile services."

At trial, Odunukwe proposed that the court instruct the jury, inter alia, that Odunukwe is an African-American of Nigerian descent, who alleged that he received check cashing services in a markedly hostile manner that was objectively discriminatory and that a reasonable person would find objectively discriminatory. He proposed that the court instruct the jury that "liability will attach when a plaintiff receives services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory." The court rejected the request and charged the jury in accordance with our own caselaw.

On appeal, Odunukwe reiterates that the district court erred in failing to give his requested instruction. There was no error.

Apart from the 6th Circuit, it does not appear that any other circuit court has embraced the Christian court's expanded formulation. Although we have referenced the Christian court's "receipt of hostile services" formulation, we have not adopted it. See Garrett v. Tandy Corp., 295 F.3d at 102 n.5 (describing the formulation as a "broader construction"); see also Lizardo v. Denny's Inc., 270 F.3d 94, 102 n.2 (2d Cir. 2001) (concluding that "[e]ven if we were inclined to employ the markedly hostile standard", the conduct alleged in the case did not meet it). We also note that the basis for the 6th Circuit's formulation arose from the District Court of Maryland's Callwood decision and that the 4th Circuit (of which the Callwood court is a part) has not yet adopted the standard set forth in Callwood. See Williams v. Staples, Inc., 372 F.3d 662, 668 n.5 (4th Cir. 2004).

Moreover, Odunukwe's requested instruction was not even a correct recitation of the 6th Circuit's caselaw. A party is not entitled to a jury instruction that does not accurately reflect the correct legal standard. John G. Danielson, Inc. v. Winchester-Conant Properties, Inc., 322 F.3d 26, 48 (1st Cir. 2003). Contrary to Odunukwe's proposed instruction that "*liability will attach* when a plaintiff receives services in a markedly hostile manner and in

a manner which a reasonable person would find objectively discriminatory," in fact, the <u>Christian</u> court's development of a "receipt of hostile services" element relates to the establishment of a *prima facie* case of discrimination. The establishment of a *prima facie* case does not result, as Odunukwe would have it, *in liability attaching*, but only in the creation of a rebuttable presumption of discrimination. <u>See</u> <u>United States Postal Serv. Bd. v. Aikens</u>, 460 U.S. 711, 714 (1983); <u>see also</u> <u>Keck</u> v. <u>Graham Hotel Sys., Inc.</u>, 566 F.3d 634, 641 (6th Cir. 2009) (the finding of receipt of services in a "markedly hostile" manner permits an inference of discrimination sufficient to state a prima facie case). Both the <u>Christian</u> and the <u>Callwood</u> courts were addressing the test for establishing a *prima facie* test of discrimination. Neither were addressing jury instructions.

As the district court correctly realized, since the case was past the prima facie stage, it made little sense to instruct the jury to first decide whether there was enough evidence to get to them since the correct determination after the case was in their hands was whether there was enough evidence to succeed on the § 1981 claim. The <u>Christian</u> court, itself, reiterated that the elements representing the plaintiff's *ultimate* burden of proof in a § 1981 action are those which our caselaw has described and which the district court in this case incorporated in its instructions. <u>Christian</u> v. <u>Wal-Mart Stores, Inc.</u>, 252 F.3d at 868, 871-72

-10-

(reciting that the test that the district court had used in granting summary judgment -- (1) the plaintiff is a member of a racial minority, (2) that the defendant intended to discriminate against him on the basis of race, and (3) the discrimination concerned one or more of the activities enumerated in the statute -- although not appropriate for use as a prima facie standard, correctly represented the plaintiff's ultimate burden of proof).

On appeal, we confine our review of a jury's verdict to the ultimate question of discrimination.  See Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 720 (1st Cir. 1994) (when a discrimination case "has been submitted to a jury, the burden-shifting framework has fulfilled its function, and backtracking serves no useful purpose.  To focus on the existence of a prima facie case after a discrimination case has been fully tried on the merits is to 'unnecessarily evade[] the ultimate question of discrimination vel non.'") (citation omitted).  Indeed, the Christian court, itself, acknowledges that, after a case has been fully tried on the merits, a reviewing court should not focus on the elements of a prima facie case, but rather should assess the ultimate question of discrimination. Christian v. Wal-Mart Stores, Inc., 266 F.3d 407 (6th Cir. 2001) (order on petition for rehearing).

In a passing reference, both in response to the jury instructions given and in his appellate brief, Odunukwe also

-11-

contends that the McDonnell Douglas burden shifting framework does not apply to a § 1981 claim. This contention is both wrong and odd in that the Christian decision on which Odunukwe so heavily relies, itself, refutes this contention. Christian v. Wal-Mart Stores, Inc., 252 F.3d at 868 (reciting that to prevail in a claim of racial discrimination under § 1981 relying on circumstantial evidence, a plaintiff must meet the McDonnell Douglas burden-shifting standard of proof); see also Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008) (same).

C.        Exclusion of MCAD report

Prior to filing suit, Odunukwe filed a complaint with the Massachusetts Commission Against Discrimination (MCAD). That complaint resulted in the production of an MCAD "Investigation Fact Sheet" ("IFS"), which summarized Odunukwe's claim that, despite proffering two forms of acceptable identification in accordance with Bank policy, his identification forms were rejected and he was not permitted to cash the check. The IFS contained the following "Conclusion."

> Based on the foregoing findings, one could form the reasonable belief that the Respondent discriminated against the Complainant by denying him services because of his race/color. Genuine issues of material fact are present which are reserved for public hearing. Therefore, a find[ing] of probable cause is warranted.

-12-

The district court granted the Bank's motion to exclude this IFS from the trial on the ground that its prejudicial value outweighed any probative value. The Bank had pointed out that the IFS stated only a conclusory probability of discrimination, had not set forth the Bank's counter evidence, and was simply a finding that sufficient facts existed to allow Odunukwe to proceed with his discrimination claim in the MCAD.

On appeal, Odunukwe argues that the court abused its discretion in the exclusion. There was no abuse of discretion. See Patten v. Wal-Mart Stores East, Inc., 300 F.3d 21, 26-27 (1st Cir. 2002) (finding no abuse of discretion in excluding right-to-sue letter from Maine Human Rights Commission); Smith v. MIT, 877 F.2d 1106, 1113 (1st Cir. 1989) (finding no abuse of discretion in excluding EEOC investigative reports).

### III.

The judgment of the district court entered on November 15, 2007 is affirmed.