USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 96-1968

 UNITED STATES,

 Appellee,

 v.

 ALBERTO LOPEZ,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Nathaniel M. Gorton, U.S. District Judge]

 Before

 Lynch, Circuit Judge,
 
 Coffin and Bownes, Senior Circuit Judges.
 
 

 James P. Duggan for appellant.
 Heidi E. Brieger, Assistant United States Attorney, with whom
Donald K. Stern, United States Attorney, was on brief for appellee.

June 12,1998

 
 
 BOWNES, Senior Circuit Judge. Defendant-appellant
Alberto Lopez was convicted by a jury on four counts of federal
narcotics offenses and two counts of criminal forfeiture. The
indictment included as a co-defendant one Angel Carrion, who pled
guilty prior to trial on the counts directed against him
individually and as a co-conspirator. Lopez was convicted on all
the counts charged against him: conspiring to possess with intent
to distribute heroin and cocaine base (21 U.S.C. 846); possession
of heroin with intent to distribute (21 U.S.C. 841(a)(1));
possession of cocaine base with intent to distribute and
distribution (21 U.S.C. 841(a)(4)) (two counts); and two counts
of criminal forfeiture, of money and an automobile (21 U.S.C.
 853).
 Because of three prior narcotics convictions Lopez was
given the mandatory life sentence. This appeal followed. We
affirm.
 Lopez raises five issues before us. One, the district
court violated his right to a fair trial by failing to follow
certain pre-trial orders. Two, violation of equal protection of
the laws by trying the case before an all-white jury and the
government striking a prospective Hispanic juror for no reason. 
Three, ineffective assistance of counsel. Four, the district court
erroneously failed to enter a judgment of acquittal and failed to
find as a matter of law that Lopez had been entrapped. Five, the
district court committed plain error by the exclusion and admission
of evidence bearing on the entrapment issue.
 A. Jury Composition
 We start our review with the two issues involving the
composition of the jury. Prior to the impanelment of the jury,
defense counsel moved that the venire be dismissed because
defendant "is going to be denied a jury with a reasonable
likelihood of some of his peers, specifically, his ethnic group,
being on that particular panel." Counsel's motion was based on a
visual inspection of the venire and an examination of the jurors'
names on the venire list. The motion was denied on the basis that
the procedure followed in the Massachusetts district court had been
approved by the Court of Appeals for the First Circuit. 
 In Duren v. Missouri, 439 U.S. 357 (1979), the Court
established the requirements for attacking the composition of a
jury:
 In order to establish a prima facie violation
 of the fair-cross-section requirement, the
 defendant must show (1) that the group alleged
 to be excluded is a "distinctive" group in the
 community; (2) that the representation of this
 group in venires from which juries are
 selected is not fair and reasonable in
 relation to the number of such persons in the
 community; and (3) that this under-
 representation is due to systematic exclusion
 of the group in the jury-selection process.

Id. at 364. Defendant has not met any of the three criteria.
 In United States v. Pion, 25 F.3d 18 (1st Cir. 1994), we
rejected an attack on the composition of juries in the district
court of Massachusetts based on under-representation of the
Hispanic population. This attack was much better directed and
armed than the one mounted before us. It was based on statistical
evidence "indicating a 3.4% 'absolute disparity' between the 4.2%
Hispanic representation in the relevant general population and the
0.80% Hispanic representation among persons appearing for juror
orientation." Id. at 23. In our opinion we held:
 The first infirmity in the unfair cross-
 section claim is that the district court
 found, and Pion does not dispute, that the
 broadest data available resident lists are
 used to make up the Master Jury Wheel from
 which Eastern Division jury venires are drawn. 
 There is no allegation, much less a showing,
 statistical or otherwise, that data more
 conducive to a fair cross section are
 available, let alone more fairly
 representative of eligible Hispanics in the
 relevant general population. Second, since
 the names included in the Master Jury Wheel
 are randomly drawn from the most inclusive
 data available, and random selection also
 determines to whom juror questionnaires are
 mailed, there can be no reasonable inference
 that the jury-selection process itself
 systematically excludes Hispanics at any stage
 up to and including the distribution of juror
 questionnaires.

Id. We further held:
 With no datum as to Hispanic representation on
 the Master Jury Wheel, and given the fact that
 the baseline data for comprising the Master
 Jury Wheel are the best available, there can
 be no reasonable inference that the relatively
 small Hispanic underrepresentation at juror
 orientation is attributable to anything other
 than the randomness of the draw from either
 the resident lists or the Master Jury Wheel.

Id. at 24. In light of these rulings, defendant has no basis for
a fair cross-section challenge based only on visual observation and
an examination of the venire's names.
 Defendant's challenges to the prosecutor's striking of a
prospective Hispanic juror does not get off the ground because
there was no objection made at trial. The defining case for racial
based challenges is Batson v. Kentucky, 476 U.S. 79 (1986). There
is no need to reiterate the standards for showing that the striking
of a juror (or jurors) was racially motivated, see id. at 96-98;
such a challenge should start with an objection by defense counsel
and there was none here. Our standard of review is, therefore,
plain error. See United States v. Perez, 35 F.3d 632, 635 (1st
Cir. 1994). There was no plain error.
B. Failure of the Government and District
 Court to Follow a Pre-trial Order

 The essence of defendant's claim is that the court, aided
and abetted by the prosecutor, pressed for trial contrary to a pre-
trial order issued by the magistrate judge and this deprived
defense counsel of the time necessary to prepare an effective
defense.
 The order that is the fulcrum for defendant's argument
was issued on July 18, 1995, by the magistrate judge. It stated:
 Request 6 and 7 - Early release of Jencks Act
 material and names and addresses of government
 witnesses.

 The government agrees to disclose Jencks
 Act material and the names and addresses of
 government witnesses fourteen days prior to
 trial. To the extent of this compliance, the
 defendant's motion is allowed.

 The district court judge set the trial date for August 7,
1995 at 9:00 a.m. Defense counsel received the notice of the trial
date on July 31, 1995. He immediately informed the court by letter
received at the clerk's office on August 1, 1995, that the
government had not produced "a variety of materials" which it had
been ordered to produce two weeks prior to trial. The letter
further stated that the materials not produced included "materials
I believe may be exculpatory, materials which might lead to and
require further investigation, and tape cassette recordings some of
which may be in Spanish and may portend translation difficulties."
 On August 7, the date set for the trial to commence,
defense counsel filed a written motion for a continuance and argued
orally that, because he had not yet received the materials, he
needed a continuance to properly prepare for trial.
 The district court denied the motion for a continuance,
but ordered that the jury would be impaneled on August 7th and
trial would start on August 9th. This meant that counsel had ten
days notice of the start of trial, not fourteen days as ordered by
the magistrate.
 On August 9th counsel for the defendant again moved for
a continuance. On the same day defendant Lopez personally moved
that the court dismiss his present attorney and appoint a new one. 
After a hearing, the court denied both motions, stating:
 THE COURT: All right. The Court has now
 had an opportunity to hear the defendant and
 defendant's counsel ex parte outside the
 hearing of the government with respect,
 specifically, to the defendant's motion to
 dismiss his appointed attorney and to have
 this Court appoint a new attorney; and,
 further, his motion objecting to the Court's
 not allowing him to address the Court and to
 request a further request for a stay of
 these proceedings. 

 The Court, after consideration, is going to
 deny both of those motions and proceed to
 trial.

 The Court believes that the defendant has
 not given or stated grounds that present a
 conflict with his own attorney or that warrant
 the dismissal of his attorney for the reasons
 stated in those motions.

 The defendant further, with respect to his
 motion to continue, is denied, and I will be
 specific with respect to the several reasons
 that he has given to continue this trial.

 First, he said that he's been presented
 today with new impeachment evidence. The
 Court finds that such evidence is not
 substantial and is digestible in the amount of
 time that he will have to consider this
 evidence; namely, from now until the time that
 he will be called upon to cross-examine the
 witness to be put on by the government.

 The defendant also claims that there have
 been revisions to the transcripts. The Court
 believes that those revisions are minor in
 nature; and, furthermore, that the transcripts
 are not lengthy and that the defendant has had 
 those transcripts for approximately one week.

 Third ground for continuance, was the
 alleged extensive involvement of the
 confidential informant which the Court
 understands, or who the Court understands the
 government will not be calling. And the
 defendant has not stated other sufficient
 grounds on which to base a continuance because
 of the confidential informant's involvement.

 The defendant has also moved for a
 continuance on the grounds that he, the
 defendant, himself, has not had time to listen
 to all of the tapes, but the defendant has had
 access to transcripts of those taped
 conversations, and the Court finds that
 sufficient.

 Finally, the defendant's counsel stated
 before the break that the final status report
 of the magistrate/judge wasn't issued until
 July 18th, but at that time there were no
 motions pending in this case, and the
 defendant does stand forewarned at that point
 when a magistrate/judge files a final pretrial 
 or final status report, that trial is
 imminent.

 We make two observations. First, the court did not say
anything about the government agreement, as contained in the
magistrate judge's pre-trial order, "to disclose Jencks Act
material and the names and addresses of government witnesses
fourteen days prior to trial." Our second observation is that
Lopez's motion to dismiss his present counsel and appoint a new one
would have, if granted, resulted in a lengthy continuance. We also
note that the denial of the motion to appoint new counsel has not
been appealed. 
 We are aware, of course, that review of a denial of a
motion for continuance is under the abuse of discretion standard. 
See United States v. Neal, 36 F.3d 1190, 1205 (1st Cir. 1994). But
this was not a routine denial of a requested continuance. 
Defendant asserts that he was entitled to rely on the order of the
magistrate judge specifying that the government would disclose the
requested information fourteen days prior to trial. Parties are
entitled to rely on pre-trial orders of the district court; they
are a vital link in the trial process. We, therefore, must
determine whether jump-starting the trial deprived the defendant of
a fair trial. 
 Defendant argues that the "Confidential Informant was
never located, nor subpoenaed to trial." Br. at 35. This
contention is without merit. The government informed defense
counsel of the name of the informant, and that he would not be
called as a government witness. Defendant had known the
confidential informant for a number of years. During a bench
conference defense counsel stated, "They can call Mr. Cruz [the
confidential informant], I could call Mr. Cruz but they both talk
about the same conversations." (Emphasis ours.) It seems rather
evident that neither party wanted Cruz to testify.
 The government states that it furnished all of the
information requested by the defense. It states that it made
available for inspection and copying all of the consensual tape
recordings of the negotiations between defendant and government
agents on March 13, 1995. At the same time the government provided
defense counsel with copies of DEA reports relative to the tape-
recorded conversations.
 At least five days prior to trial, defense counsel was
furnished with a complete set of the Spanish and English
transcripts of the tape recordings by the government. And at least
five to six days prior to each witness's testimony at trial, the
government provided Jencks Act statements to defense counsel. The
government points out that this exceeds the requirements of the
Jencks Act, which it does. See 18 U.S.C. 3500(a) (no statement
of a government witness "shall be the subject of subpena [sic],
discovery, or inspection until said witness has testified on direct
examination in the trial of the case." But the government had
agreed to produce the statements fourteen days prior to the start
of trial and the court had so ordered.
 In light of the magistrate judge's pre-trial order we
think the district court should have given the parties fourteen
days notice of the start of the trial. We are fully aware of the
pressure on busy district court judges to try cases as
expeditiously as possible. The court, however, also has a duty to
follow its own pre-trial orders. This is especially so when
defense counsel claims that a deviation from the order will impair
his ability to mount a proper defense. In this case, conviction
meant a life sentence for the defendant.
 Based on our careful review of the record we cannot find
that the failure to follow the magistrate judge's order seriously
prejudiced the defendant. It clearly did not deprive him of a fair
trial. Defense counsel was able to cope effectively with the
shortened period of preparation. He was furnished with all of the
transcriptions, Spanish and English, of the wire recordings of the
drug transactions at least five days before the trial started. 
Despite one minor delay due to poor communication between the court
and the officials in charge of defendant's place of confinement in
Plymouth, Massachusetts, defendant was able to examine the Spanish
version of the wire recordings and discuss them with his attorney. 
We must note here that the court insisted that defendant and
defense counsel be furnished the materials sought as promptly as
possible. Although we are sure that defense counsel was put under
extra pressure because of the advanced trial date, he responded
ably and used the materials furnished by the government 
effectively.
 C. The Entrapment Defense
 The only defense that defendant pursued, and the only one
realistically available, was that he had been entrapped by an
acquaintance of long-standing, Pedro Cruz. Cruz had been
associated with defendant in prior drug sales. Cruz was a
confidential informant employed by the DEA during the time of the
charged offenses. 
 Before defendant took the stand, the court advised
defense counsel that, if defendant asserted entrapment and
testified, his prior drug convictions could be used on cross-
examination by the government on the issue of predisposition. 
Defense counsel objected to this ruling. The court gave defendant
additional time to consider his options. After the prosecutor had,
during cross-examination, brought out defendant's prior
convictions, the judge instructed the jury as follows:
 Jurors, the evidence regarding the alleged
 crimes previously committed by Mr. Lopez
 should not be used by you as evidence that he
 actually committed the crimes charged in this
 case.

 The prior crimes are offered by the
 government only in its attempt to rebut the
 testimony of the defendant and to show that
 the defendant was predisposed or inclined to
 commit a crime such as those which have been
 charged in this case.

 On direct examination defendant testified that he had
been addicted to heroin and cocaine in the past. To conquer his
addiction he had joined both narcotics anonymous (NA) and
alcoholics anonymous (AA). He had overcome his addiction and
obtained a good paying job. For about three years he led a normal
life; he was a loving father and a devoted husband. His life
started to unravel when the confidential informant, Pedro Cruz,
started calling him in May of 1994 and importuning him to obtain
drugs for sale to customers. Unfortunately for defendant, the
customers were undercover DEA agents.
 When defense counsel asked defendant what Cruz had said
to him during the telephone conversations, the government objected
on hearsay grounds ("classic hearsay") and the court upheld the
objection. Defense counsel objected to the ruling and argued
strenuously that Cruz's telephone statements should be allowed in
evidence because they were vital to the entrapment defense. The
judge adamantly refused to allow the testimony. He did, however,
rule that defendant could be asked "about the phone calls he got,
how many meetings they [had], what they did, but he cannot get into
evidence out-of-court-statements." The court added: "He can say
what he did as the result of the phone calls." 
 Counsel, however, did not raise the one argument that
might have been accepted by the court: that the testimony was not
offered for the truth of the matter asserted but to show
defendant's state of mind as bearing on the entrapment defense, and
therefore was not hearsay. See United States v. Cantu, 876 F.2d
1134, 1137 (5th Cir. 1989); 5 Jack B. Weinstein & Margaret A.
Berger, Weinstein's Federal Evidence, 801.03 (Joseph M.
McLaughlin, ed., Matthew Bender 2d ed. 1998). Because defendant
failed to raise this argument below, he is precluded from pursuing
it on appeal; we consider it waived. See United States v. Cardoza,
129 F.3d 6, 19 (1st Cir. 1997).
 Although defense counsel was not able to put in evidence
defendant's testimony as to what Lopez had said during the numerous
phone calls assertedly made by Cruz, he was able by dint of
persistent and adroit questioning to paint a picture of Cruz
repeatedly asking defendant to come back into the drug business. 
Defendant testified that at first he refused Cruz's requests, but
finally caved in "to get him off my back."
 Defense counsel then asked him: "What was your state of
mind at that time, Sir?" The response was: "He was like trying to
make me do something that I didn't want to do."
 Defendant testified in effect that, as a result of Cruz
inducing him back into the drug trade, he became an addict again
and that, over time, his state of mind changed.
 Although Cruz's telephone statements were not hearsay,
evidence was submitted to the jury sufficient for it to find
entrapment, if it chose to do so. And the court gave an entrapment
instruction which has not been attacked on appeal.
 It is not difficult to understand the jury's guilty
verdict. There was a mass of overwhelming evidence against the
defendant. In addition to transcripts of wire recordings of what
was said by defendant and his cohorts at the various drug
transactions and set-up meetings, there was testimony by three DEA
agents and one Massachusetts state trooper, who either were
directly involved in drug sales in which defendant was a
participant or observed him during surveillance of the drug
transactions. The other issues raised by defendant merit only
scant discussion.
 The ineffective assistance of counsel claim is deferred
until after it is considered by the district court. See United
States v. Mala, 7 F.3d 1058, 1063 (1st Cir. 1993) ("We have held
with a regularity bordering on monotonous that fact-specific claims
of ineffective assistance cannot make their debut on direct review
of criminal convictions, but, rather, must originally be presented
to, and acted upon by, the trial court."). 
 The district court did not err in failing to enter a
judgment of acquittal. Nor did it err in failing to rule as a
matter of law that defendant had been entrapped. And the district
court did not commit plain error in its evidentiary rulings during
the entrapment part of the trial.
 The judgment below is Affirmed.