UNITED STATES of America, Appellee,

v.

Julio PEREZ, Defendant, Appellant.

No. 93–1320.

United States Court of Appeals,
First Circuit.

Heard Sept. 15, 1994.

Decided Oct. 7, 1994.

Raymond E. Gillespie, Cambridge, for appellant.

Frank A. Libby, Jr., Asst. U.S. Atty., with whom Donald K. Stern, U.S. Atty., was on brief, for appellee.

Before TORRUELLA, Chief Judge, COFFIN and CAMPBELL, Senior Circuit Judges.

COFFIN, Senior Circuit Judge.

This is an appeal under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), from the trial court's allowance of a prosecutor's peremptory challenge to a Spanish surnamed juror. Finding that it was not clearly erroneous for the trial court to reject appellant's claim that the strike was racially motivated, we affirm the judgment of conviction.

During jury selection in a drug conspiracy prosecution against appellant and several co-defendants, all bearing Spanish surnames, one of the first twelve names drawn was that of Ruth Santiago. At sidebar the court questioned several of the prospective jurors and excused three. Then the government moved to strike Ms. Santiago. The following colloquy took place.

MR. LIBBY: The government would strike No. 40, Juror No. 3.

MR. BROWN: Your Honor, note my objection to that. This woman is the only Spanish surnamed person on this jury list.

THE COURT: Perhaps Mr. Libby would explain why he's challenging that juror.

MR. LIBBY: Has nothing to do with her surname, your Honor. We note that in discussion with cocounsel, she's a receptionist at Boston Housing Authority.

THE COURT: Therefore?

MR. LIBBY: Therefore, we believe that if she's in the inner city, she may have, who knows, more contact with seeing drugs in BHA operated apartments. Who knows how that cuts? It has nothing to do with the basis of her surname.

MR. GILLESPIE: Join in the objection.

MR. GEDIMAN: I would like to join in the objection.

MR. KERNER: Outrageous, your Honor.

MR. GEDIMAN: Outrageous. The reasoning makes no sense.

MR. BROWN: Case law is very clear, as you know, your Honor.

MR. LIBBY: Can you give us a record? [Pause.]

MR. LIBBY: Your Honor, government's objection has nothing to do with her surname, we stand on the strike.

THE COURT: I understand. The defendants have any?

MR. BROWN: Just a few, your Honor.

Jury selection then continued, the government making one other peremptory challenge and one of appellant's co-defendants making several. After making the defendants' final collective peremptory challenge, co-defendant's counsel asked for additional challenges "[i]n light of the government's outrageous strike of the only Hispanic surname[d] person of the jury." The court gave one additional challenge, saying, "[n]ot because of any outrageousness, but general sense of fairness." Finally, a jury of twelve and two alternates was chosen, and, without any objection, sworn.

### Discussion

■ A three part test is used to evaluate equal protection challenges to a prosecutor's exercise of peremptory strikes of potential jurors. *Batson*, 476 U.S. at 96–98, 106 S.Ct. at 1722–24. Initially, the burden is upon the defendant to make a prima facie showing that the prosecutor has struck a potential juror because of race. At the second stage, once a prima facie case has been made out, the burden shifts to the prosecutor to articulate a race-neutral explanation for the strike. Finally, if the prosecutor articulates a race-neutral reason, the trial court is charged with deciding whether the defendant has carried his burden of proving that the strike constituted purposeful discrimination on the basis of race. *See Hernandez v. New York*, 500 U.S. 352, 358–59, 111 S.Ct. 1859, 1865–66, 114 L.Ed.2d 395 (1991) (citing *Batson*).

We pass, without analysis, the question whether appellant had made a prima facie showing of intentional discrimination, inasmuch as the prosecutor offered his explanation and the trial court, by its comment, "I understand," and its upholding of the challenged strike, effectively "ruled on the ultimate question of intentional discrimination." *Hernandez*, 500 U.S. at 359, 111 S.Ct. at 1866. Whether or not a prima facie showing of discrimination was made is therefore moot.

■ The next step of the inquiry is whether the prosecutor met his burden of articulating a race-neutral basis for striking Ms. Santiago. In this context, an explanation may be "race neutral" even though it does not produce uniform results across racial lines. *See id.* at 362, 111 S.Ct. at 1867 ("[D]isparate impact … will not be conclusive in the preliminary race-neutrality step of the *Batson* inquiry."). Rather, an explanation is race neutral simply if it is

> based on something other than the race of the juror. At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.

*Id.* at 360, 111 S.Ct. at 1866. Here, the prosecutor's stated reason for striking Ms. Santiago was that her employment as a receptionist at the Boston Housing Authority in the "inner city" may have exposed her to drugs. Regardless of whether one accepts that this was the prosecutor's true motive, on its face this explanation is race neutral. First, it is based on "something other" than the race of the juror. Second, racially discriminatory intent is not inherent in striking a potential juror, in a drug trial, because of suspicion of possible exposure to drugs during employment at a city housing authority. Said differently, this same concern might motivate exercise of a peremptory challenge to a non-Hispanic potential juror as well.[1]

■ ▪We note that this explanation certainly *might* have been offered as pretext to cover the prosecutor's true intent to strike Ms. Santiago because she was Hispanic. Indeed, "inner city exposure to drugs" is quite susceptible to impermissible use as proxy for the race-based exercise of peremptory challenges. But, at the second stage of the *Batson* inquiry, we believe that this explanation falls within the Supreme Court's definition of being race neutral. The fact that, if this explanation were applied generally, it

1. Appellant claims that the prosecutor's explanation was facially pretextual, laying particular emphasis upon the prosecutor's reference to Ms. Santiago's residence as being "in the inner city." On appeal, he now identifies for the first time two other jurors without Spanish surnames with jobs or residences at inner city locations. But appellant's focus on inner city living skips over the prosecutor's stated apprehension that the challenged juror, because of her job as a receptionist, may have had "more contact with seeing drugs in BHA operated apartments."

may serve to exclude a disproportionate number of minority jurors, is used only "as circumstantial evidence of discriminatory intent at the third stage and not as a controlling legal factor in the second." *United States v. Uwaezhoke*, 995 F.2d 388, 393 (3d Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 920, 127 L.Ed.2d 214 (1994).

■ At the third stage, once the defendant's burden to make out a prima facie case and the prosecutor's burden to articulate a race-neutral explanation for the strike have been met, it is for the trial court to decide the ultimate question of whether the defendant has proved that the prosecutor's strike was, in fact, motivated by race. *Hernandez*, 500 U.S. at 359, 111 S.Ct. at 1866; *Batson*, 476 U.S. at 98, 106 S.Ct. at 1723–24. In other words, the trial court must choose whether to believe the prosecutor's race-neutral explanation or to find that the explanation was pretext to cover race-based motives. This determination turns upon an assessment of the credibility of the prosecutor's explanation, the "best evidence" of which "often will be the demeanor of the attorney who exercises the challenge." *Hernandez*, 500 U.S. at 365, 111 S.Ct. at 1869. Since "evaluation of the prosecutor's state of mind based upon demeanor and credibility lies 'peculiarly within the trial judge's province,' " *id.* (quoting *Wainwright v. Witt*, 469 U.S. 412, 428, 105 S.Ct. 844, 854, 83 L.Ed.2d 841 (1985)), "the trial court's decision on the ultimate issue of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal." *Id.* at 364, 111 S.Ct. at 1868. We would reverse such a finding only if it is clearly erroneous. *Id.* at 369, 111 S.Ct. at 1871.

■ Here, appellant's co-defendant raised the *Batson* challenge and the trial court elicited from the prosecutor his facially race-neutral explanation for the strike. Several other co-defendants, including appellant, then joined in the objection. After conferring, government prosecutors reiterated that the strike was not race based, and, apparently confident that the explanation already given was sufficient, stated that they would "stand on the strike." The court responded by stating, "I understand," and proceeded to ask defendants if they elected to exercise any of their remaining peremptory challenges.

In effect, therefore, the court denied defendants' challenge, presumably crediting the prosecution's stated explanation and finding that the strike was not impermissibly motivated. The district judge, who may have been aware of major areas of drug activity in the Boston area, and who was able to assess the prosecutor's demeanor at the moment the explanation was given, evidently believed that the stated reason had some basis in fact. We cannot say that the prosecutor's stated reason was so illogical that it failed, as a matter of law, to support the trial judge's finding. As in *Hernandez*, "[t]he trial court did not commit clear error in choosing to believe the reasons given by the prosecutor." *Hernandez*, 500 U.S. at 372, 111 S.Ct. at 1873.

■ Although we uphold the judgment in this case, as a general matter district courts should articulate the bases of their factual findings related to *Batson* challenges more clearly than occurred here. Specifically, especially in the face of continued disagreement by defense counsel, a district court should state whether it finds the proffered reason for a challenged strike to be facially race neutral or inherently discriminatory and why it chooses to credit or discredit the given explanation. Indicating these findings on the record has several salutary effects. First, it fosters confidence in the administration of justice without racial animus. Second, it eases appellate review of a trial court's *Batson* ruling. Most importantly, it ensures that the trial court has indeed made the crucial credibility determination that is afforded such great respect on appeal.

The fact that no such express findings were made here does not convince us to reverse. We note that this is the first time our Circuit has announced the desirability of express *Batson* fact findings. Moreover, after the court allowed Ms. Santiago to be struck without making express fact findings,

just as in *United States v. Pulgarin*, 955 F.2d 1, 1 (1st Cir.1992), "[t]here was no further comment from defense counsel by way of elaboration of his thought, objection, dissatisfaction with the prosecutor's explanation, or request for examination." At that point, if defense counsel felt that the trial court had failed to actually assess the prosecutor's credibility or had made a precipitous or erroneous judgment, it should have pointed this out. Counsel could have explained *why* the prosecutor's rationale was "outrageous," "made no sense," and did not deserve to be credited. The prosecutor then could have elaborated his reasons[2] and the court presumably would have expressly made the above two findings. Since defendant failed to pursue the matter further at voir dire, upsetting the judgment for lack of a more detailed explanation by the trial court in this case would make little sense.

*Affirmed.*

---

**2.** Indeed, in oral argument before us the prosecutor did elaborate on the reason for his association of BHA apartments with possible exposure to drugs: The United States Attorney's Office had, in the prior year, been engaged in a major drug prosecution against more than fifty defendants accused of carrying on their organized operations out of Boston Housing Authority apartments. Ostensibly, if defense counsel had more extensively argued that the proffered reason was pretextual, the prosecutor might have informed the trial judge of this fact as well.