USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________No. 97-2217 UNITED STATES, Appellee, v. ANTHONY SERINO, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ____________________ Before Boudin, Circuit Judge,Bownes and Reavley, Senior Circuit Judges. _____________________ Frederick R. Ford, by appointment of the Court, for appellant. Geoffrey E. Hobart, Assistant United States Attorney, withwhom Donald K. Stern, United States Attorney, was on brief, forappellee. ____________________ December 30, 1998 ____________________ REAVLEY, Circuit Judge. Anthony Serino was convicted ofconspiracy to distribute cocaine and of possession with intent todistribute cocaine; he was sentenced to three years imprisonment. We reverse and remand for retrial because he was erroneously denieda peremptory juror challenge. Serino was apprehended as the result of an intensiveinvestigation by the Drug Enforcement Administration of the Salemchapter of the Hells Angels Motorcycle Club. He was not a clubmember but served its drug trafficking as a courier. A DEA specialagent posed as a buyer desiring to purchase thirty ounces ofcocaine. He was told to meet ten different couriers at tendifferent locations each half hour, and that each courier woulddeliver three ounces of the drug in a brown paper bag. At 3:00p.m. he was to meet "Anthony," a "skinny little kid" who would knowthe intended buyer's car. Defendant Serino drove alongside thebuyer's car at the appointed time and place, introduced himself as"Anthony" and, without invitation, entered the car and producedthree ounces of cocaine in an unsealed brown paper bag. Serinowatched, without comment, as the buyer activated a secret latch andplaced the bag in a hidden compartment, and then he parted byagreeing that he and the buyer would probably see each other in thenear future. The evidence supported the conviction. The extra-judicial statements of the co-conspirators were admissible underFed. R. Evid. 801(d)(2)(E), and Serino's agreement about the futuremeetings was proof of his knowledge that multiple crimes wereintended. A new trial, however, is necessitated by the court'sseating of a juror despite the defendant's peremptory challenge. The Peremptory Challenge RulingThe Record The district judge conducted the voir dire of the jurypanel by general questions and asked Ching Cheung only to state theoccupations of herself and her husband. We know nothing about herexcept her name, her Asian appearance, and this response to thecourt: "I am a social worker, work with Union Square NursingCenter. My husband works as a financial analyst." When the defense attorney challenged Ms. Cheung, thejudge disapproved. THE COURT: Ms. Cheung, she's our only Asian American, why are you challenging her? MR. BURNS: Social worker; background. THE COURT: Why should that be a ground of challenge? I mean, you understand what I'm doing, I have a Batson problem with her. I think you may be challenging her because of her ethnic heritage. MR. BURNS: I'm not. I told you, her background, what she does, what her husband does. THE COURT: And what's that? When you say a social worker, why don't you want a social worker? MR. BURNS: Financial analyst, her husband is. THE COURT: What does that have to do with anything pertaining to drugs? I just don't see the connection. No, I'm disallowing that challenge. Counsel for the defendant renewed his objection after thejury was seated and moved for a mistrial. In the hearing on thatmotion, counsel explained that he was confused by the court'sinquiry of his reason for asking that Ms. Cheung be excused; andthat when the judge mentioned Batson, counsel thought that case hadno applicability to his challenge. The judge then explained hisruling: THE COURT: [W]ell, here's what it has to do, here's the logic of Batson. Because every citizen has a right equally to serve on the juries of this nation. Jury service is as I explain to juries that most vital expression of direct democracy that exists. No one can be denied, in the view of this Court, the right. It's their right. You don't have to have racial issues in a case. I don't suggest that there were. I suggest that every single person qualified for jury service has a constitutional right, which I think is within the Sixth and Seventh Amendments, to serve on the nation's juries. They cannot be denied that right on the grounds of gender, race, or national origin. . . . . . MR. BURNS: . . . I submit to the Court that the reason was, in a drug case, she was a social worker and we didn't want her on the jury and you told me that that wasn't sufficient. . . . . . THE COURT: I understand that's the position. There is a factual piece to fill in. Let me be clear. I did not credit your explanation from your demeanor and the interchange in the record. I thought you were in fact challenging her because she was different than the other jurors, different because she was an Asian American. I ordered her seated. . . . . . . . . MR. BURNS: I gave you the valid reason and then you told me that was not sufficient. I believe the record will reflect it. THE COURT: I don't believe it. I didn't then, I don't now. The Government argues here that the judge simply made acredibility finding, a finding that is not clearly erroneous.Discussion While the entitlement to peremptory challenges isrestricted by the equal protection rights of defendants and thechallenged jurors, it remains an essential factor in securingfairness and impartiality of trial by jury. This court has saidthat this "is one of the most important rights of the accused." United States v. Gonz lez Vargas, 585 F.2d 546, 547 (1st Cir.1978). The restriction imposed by the Supreme Court in Batsoncases goes no further than to prevent purposeful invidiousdiscrimination and assure selection of jurors pursuant tonondiscriminatory criteria. Batson v. Kentucky, 476 U.S. 79, 86,106 S. Ct. 1712, 1717, 90 L. Ed. 2d 69 (1986). Implementation of the restriction against discriminationis by looking, first, for a prima facie showing of discrimination;second, calling for a race-neutral explanation for the tenderedchallenge; and, finally, decision by the trial court on whether theobjection to the challenge meets the burden of proving the reasongiven to be pretexual for purposeful racial discrimination. Purkett v. Elem, 514 U.S. 765, 767, 115 S. Ct. 1769, 1770-71, 131L. Ed. 2d 834 (1995). We will pass the question of whether a primafacie case of ethnic discrimination was presented when a man namedSerino challenges the only Asian American on the jury venire in aBoston trial and go to the question of whether all of thecircumstances proved purposeful discrimination. The defendant'slawyer gave a perfectly understandable reason for the challenge; hepreferred not to have a social worker decide a drug charge. We areat a loss to find any evidence to prove that this reason was apretext for actual discrimination against Asian-Americans. SeeCaldwell v. Maloney, --- F.3d ---, ---, 1998 WL 7571651, at *7-*8(1st Cir. Nov. 2, 1998) (noting various indications that mightdemonstrate a pretextual Batson explanation, such as if theproffered reason is equally applicable to a non-challenged juror ofa different race; the facts in the record are objectively contraryto the proffered race-neutral explanation; counsel inadvertentlyadmits that race played some role in striking the juror; there isdirect evidence of racial bias; or a series of strikes consideredtogether suggest racial bias, though taken separately eachexplanation is race-neutral); see also United States v. Prez, 35F.3d 632, 636 (1st Cir. 1994) (noting that the trial court mustmake express findings of fact when it decides to discredit a givenexplanation). If the judge disbelieved defense counsel, it was becausethe judge did not accept an objection to a social worker as a validreason for not wanting that person on the jury. The only reasonapparent to the judge was the difference between Ms. Cheung and theother jurors, a difference in ethnicity, rather than occupation orbackground. The judge simply saw no connection between the socialworker experience of Ms. Cheung and her decision as a juror in adrug case. But the defense attorney did see a connection(obviously, that a social worker might be especially sensitive tothe harm wrought by drugs), and it was race- and ethnicity- andgender-neutral. If the judge found that reasoning to bepretextual, there is no support for the finding and it was clearlyerroneous. To enforce the entitlement to the peremptory challenge,we reverse the conviction without proof of prejudice or proceedingto consider harmlessness. See United States v. Schneider, 111 F.3d197, 204 (1st Cir. 1997); United States v. Annigoni, 96 F.3d 1132,1134 (9th Cir. 1996) (en banc). Judgment reversed. Case remanded.