2008 UT 53

**STATE of Utah, Plaintiff and Respondent,**

v.

**Dennis ROSA–RE, Defendant and Petitioner.**

**No. 20070305.**

Supreme Court of Utah.

July 29, 2008.

Mark L. Shurtleff, Att'y Gen., Christine F. Soltis, Asst. Att'y Gen., Salt Lake City, for plaintiff.

Linda M. Jones, Michael D. Misner, Heather J. Chesnut, Salt Lake City, for defendant.

WILKINS, Justice:

¶ 1 We are called upon in this case to decide whether the court of appeals erred in concluding that Petitioner Dennis Rosa–Re's *Batson* challenge was untimely. We hold that the court of appeals did so err, and we remand for a consideration of the merits of Petitioner's *Batson* challenge.

## BACKGROUND

¶ 2 Dennis Rosa–Re was charged by information with forcible sexual abuse. In March 2006, Rosa–Re's trial began with jury selection. After the "for cause" challenges, the State and the defense each subsequently used peremptory challenges to strike three men and one woman from the panel. Just prior to the names of the jurors being announced, defense counsel requested a sidebar conference and the following conversation occurred:

> DEFENSE: I think given the seriousness of the charges we're probably going to need the record to make a *Batson* challenge. Just wanted to make everybody aware because of the sixteen perspective [sic] jurors that we had left after the for-causes,[1] four were men, three were stricken by the state.
>
> PROSECUTOR: Come again?
>
> DEFENSE: We had four potential male jurors and you struck three.
>
> . . .
>
> DEFENSE: So we just need the record.
>
> . . .
>
> THE COURT: Okay, alright, we can do that.
>
> DEFENSE: Okay.

¶ 3 Following the sidebar conference, the trial court announced the names of the jurors. Rosa–Re did not object. The trial court then asked each of the parties if this was the jury they had selected, to which Rosa–Re replied, "Yes, Your Honor." The empaneled jurors were then sworn in and Rosa–Re made no objection. The trial court then dismissed the remainder of the venire, including the purportedly improperly stricken male jurors. Again, Rosa–Re remained silent.

¶ 4 After jury selection had been completed and the venire dismissed, Rosa–Re challenged the composition of the empaneled jury members, claiming that the prosecutor purposely discriminated against males in violation of the Fourteenth Amendment. The trial court then asked both the prosecutor and defense counsel to explain the reasons for their peremptory strikes. After consid-

---

1. This number is actually inaccurate. After the for-cause challenges, twenty-one jurors re-  mained.

eration, the trial court stated that "based upon the reasons given and the conduct of both sides, I don't find a violation of *Batson* and the jury is constituted and the explanations given satisfy the Court that this jury may proceed."

¶ 5 In March 2006, Rosa–Re went to trial. The jury found him guilty of the forcible sexual abuse charge but acquitted him of the child abuse charge. Rosa–Re filed an appeal with the court of appeals, claiming that the trial court erred in overruling his *Batson* challenge. Refusing to consider the merits of the *Batson* challenge, the court of appeals held that Rosa–Re had failed to timely raise and *resolve* his objection before the jury selection process was completed. *See State v. Rosa–Re*, 2007 UT App 91U, paras. 2, 6, 2007 WL 772769. Rosa–Re subsequently petitioned this court for review.

## STANDARD OF REVIEW

■■■ ¶ 6 "On certiorari, we review the decision of the court of appeals, and not that of the district court." *State v. Valdez (Valdez II )*, 2006 UT 39, ¶ 11, 140 P.3d 1219 (internal quotation marks omitted). "Whether [a] *Batson* challenge was timely raised is a question of law. We review questions of law for correctness, granting no deference to the legal conclusions of the court of appeals." *Id.*

## ANALYSIS

■■■ ¶ 7 The right to a fair and impartial jury is a constitutional cornerstone of our criminal justice system. However, "[t]he Constitution guarantees a defendant the right to an impartial jury, not a jury of a particular composition." *Lafferty v. State*, 2007 UT 73, ¶ 15, 175 P.3d 530 (citations omitted). Indeed, either party may exercise peremptory strikes to remove jurors during jury selection for "virtually any reason, or for no reason at all." *State v. Cannon*, 2002 UT App 18, ¶ 6, 41 P.3d 1153. A party may not, however, strike prospective jurors solely on the basis of race or gender. *See J.E.B. v. Alabama*, 511 U.S. 127, 141–42, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (prohibiting discrimination in the jury selection process on the basis of gender as a violation of the Equal Protection Clause of the Federal Constitution); *Batson v. Kentucky*, 476 U.S. 79, 84–85, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) (prohibiting discrimination against potential jurors on the basis of race as a violation of the Equal Protection Clause of the Federal Constitution); *see also* Utah Code Ann. § 78–46–3 (2002) ("A citizen shall not be excluded or exempt from jury service on account of race ... [or] sex ...."). If a criminal defendant believes the prosecution has peremptorily stricken a juror because of race or gender, he may raise a *Batson* objection. "[A] *Batson* challenge amounts to a statement that the opposing litigant's use of peremptory challenges violates the Fourteenth Amendment, *and* as a result the empaneled jury is improperly composed." *Valdez II*, 2006 UT 39, ¶ 25, 140 P.3d 1219 (emphasis added).[2]

■ ¶ 8 Under clearly established Utah law, "*Batson* challenges must be raised both before the jury is sworn and before the remainder of the venire is dismissed in order to be deemed timely."[3] *Id.* ¶ 26. This bright

---

**2.** When raising a *Batson* challenge, a defendant is not merely objecting to the prosecutor's peremptory strike; instead, he is also objecting to the actual composition of the empaneled jury. *See Valdez II*, 2006 UT 39, ¶¶ 17 & n. 12, 25, 140 P.3d 1219. In doing this, the defendant is asserting not only his *own* constitutional right to be tried by a fairly selected jury, but is also asserting the constitutional right of the individual juror who was unfairly excluded from jury service. *See id.* ¶ 17 n. 12. "[I]f a Batson challenge is found, the improperly excluded juror can then be reinstated." *Id.* ¶ 45.

**3.** We note that this court had not yet decided *Valdez II* at the time of Rosa–Re's trial. Instead, the last word on the timeliness of a *Batson* objection was the court of appeals' holding in *State v. Valdez (Valdez I )*, 2004 UT App 214, 95 P.3d 291. In *Valdez I*, the court of appeals concluded that a district court could consider a *Batson* challenge that was not raised until after the jury was sworn and the venire was dismissed if it found "good cause" to address it under Utah Rule of Civil Procedure 18(c)(2). 2004 UT App 214, ¶¶ 7–11, 95 P.3d 291. The court of appeals also explicitly rejected the State's proposed rule that a *Batson* objection must be raised before the jury is sworn and the venire is dismissed because such a rule was not "firmly established and regularly followed" under Utah law. *Id.* ¶ 11.

line rule is necessary so that "the trial court is able to fashion a remedy in the event a *Batson* violation has occurred." *Id.* ¶ 44. Furthermore, requiring that a *Batson* objection be resolved before the jury is sworn and the venire is dismissed "efficiently allows the trial court to determine the issues the *Batson* test is designed to resolve."[4] *Id.* ¶ 43. Accordingly, we reiterate that a *Batson* objection will only be deemed timely if it is raised by counsel *before* the jury is sworn and before the venire is dismissed. Rosa–Re argues that his *Batson* challenge was timely because during the sidebar conference, which occurred prior to the swearing of the jury and the dismissal of the venire, he referenced *Batson* in the context of jury selection and noted that male jurors had been stricken. Rosa–Re insists that this language, while minimal, was enough to put the trial court on notice that a *Batson* objection was being raised, and that the trial court's failure to act in an expedient manner should not affect the timeliness of his challenge.

[6] ¶ 9 The State, on the other hand, contends that Rosa–Re's sidebar statements did not amount to a clear and concise allegation of an equal protection violation because he did not allege that the prosecutor had intentionally discriminated against males, nor did he allege that the peremptory strikes resulted in a constitutionally deficient jury. Instead, the State argues, Rosa–Re only vaguely stated his intention to raise a *Batson* challenge *at some point* in the proceedings. Moreover, the State notes that Rosa–Re did not seek reinstatement of the wrongfully

stricken jurors, but in fact acquiesced in the composition when he approved the empaneled jury. Accordingly, the State argues that Rosa–Re's *Batson* challenge was untimely and the court of appeals' decision should be affirmed.

¶ 10 We agree with Rosa–Re that his *Batson* objection was timely. Rosa–Re raised the objection in accordance with the Utah Rules of Criminal Procedure, *see* Utah R.Crim. P. 18(c)(2), and the case law at the time of the trial. *See Valdez I*, 2004 UT App 214, 95 P.3d 291. The objection—raised prior to the jury being sworn and the venire being dismissed—referenced *Batson* in the context of jury selection and noted that the State had stricken three men. In that context, it is simply inconceivable that the trial court was unaware that defense counsel was raising a *Batson* challenge. Accordingly, Rosa–Re's *Batson* challenge was timely, and the court of appeals erred in concluding otherwise.

¶ 11 The *only* issue presented on appeal is the narrow question of whether Rosa–Re's *Batson* challenge was timely, and we decide the instant case strictly on that basis. We take this opportunity, however, to briefly discuss other practical aspects of the *Batson* objection.

█ ¶ 12 Rosa–Re's *Batson* objection was substantively adequate. During the sidebar conference, defense counsel stated,

I think given the seriousness of the charges we're probably going to need the record to make a *Batson* challenge. Just wanted to make everybody aware because

---

This court subsequently reversed *Valdez I*. Contrary to the court of appeals' reasoning, this court concluded that "it is a *well established* principle that *Batson* challenges must be raised both before the jury is sworn and before the remainder of the venire is dismissed . . . ." *Valdez II*, 2006 UT 39, ¶ 26, 140 P.3d 1219 (emphasis added). Because Rosa–Re's trial occurred *prior* to *Valdez II*, however, we clarify that for the facts of this case only, we apply the timeliness rule articulated in *Valdez I*.

4. In resolving the merits of a *Batson* challenge, Utah courts apply a three-part burden-shifting test to determine whether the peremptory strike violates the Equal Protection Clause. *See Valdez II*, 2006 UT 39, ¶ 15, 140 P.3d 1219. First, courts consider whether the opponent of the purportedly improper strike has established "a pri-

ma facie case of purposeful discrimination in the selection of the . . . jury." *Id.* "In other words, the challenging party must 'produc[e] evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred.'" *Id.* (alteration in original) (quoting *Johnson v. California*, 545 U.S. 162, 170, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005)).

"[O]nce [the defense] has established a prima facie case, the burden shifts to the proponent of the peremptory challenges to rebut the prima facie case by offering neutral, nondiscriminatory justifications for the peremptory challenges." *Id.* Finally, if the State "provides a sufficient explanation for the peremptory challenges," the court must then decide whether the defense "has proven purposeful discrimination." *Id.*

of the sixteen perspective [sic] jurors that we had left after the for-causes, four were men, three were stricken by the state. We have already concluded that referencing *Batson* and gender in the context of jury selection prior to the swearing of the jury and the dismissal of the venire was sufficient to satisfy the timeliness rule and put the trial court on notice of the objection in this case. In the future, however, defense counsel would be wise to clearly articulate that they are making a *Batson* objection and state the basis for that objection. Indeed, "a *Batson* challenge must be raised in such a manner that the trial court is able to fashion a remedy in the event a *Batson* violation has occurred." *Valdez II*, 2006 UT 39, ¶ 44, 140 P.3d 1219. Accordingly, going forward, the proponent of a *Batson* challenge *must* clearly articulate that a *Batson* objection is being made and that the peremptory strike was purposefully used to discriminate on the basis of race or gender in violation of the Equal Protection Clause.

¶ 13 Furthermore, inasmuch as *Valdez II* had not been decided at the time of Rosa–Re's trial, we conclude that the trial court here did not commit error in terms of *when* it resolved the *Batson* objection. At the time of the trial, the trial court simply had to resolve the motion, which it did. *See Valdez I*, 2004 UT App 214, ¶¶ 10–11, 95 P.3d 291 (stating that a trial court could resolve a *Batson* challenge even *after* the jury had been sworn and the venire dismissed if it found "good cause" to do so under Utah Rule of Criminal Procedure 18(c)(2)). Accordingly, we find no error in the timing of the trial court's resolution of the objection. We clarify that in the future, however, trial courts have an obligation to resolve *Batson* objections before the jury is sworn and the venire dismissed. Given that the express purpose of *Batson* is to correct a constitutionally deficient jury composition before the jury is actually seated and sworn, postponing the resolution is inappropriate.

¶ 14 Moreover, in the event that the trial court fails to timely resolve a *Batson* objection, defense counsel also has an absolute obligation to notify the court that resolution is needed before the jury is sworn and the venire dismissed. Failure to do so, or acquiescing in the court's inaction,[5] will in the future constitute a waiver of the original objection. *See Allen v. Lee*, 366 F.3d 319, 327–28 (4th Cir.2004) (holding that a defendant waives a *Batson* violation by not objecting to the empaneled jury); *cf. State v. Winfield*, 2006 UT 4, ¶ 13, 128 P.3d 1171 (refusing to review the defendant's claim of jury bias where defendant "affirmatively represented to the trial court that he had no objection to the jury panel").

## CONCLUSION

¶ 15 We conclude that Rosa–Re's *Batson* challenge was timely, and remand to the court of appeals to review the trial court's conclusion that the State's peremptory challenges were not discriminatory. We also conclude that going forward, trial courts *must* resolve *Batson* challenges before the jury is sworn and the remainder of the venire is excused. Furthermore, we note that defense counsel has a duty to clearly articulate its initial *Batson* objection, as well as an obligation to remind the trial court that timely resolution is required if it appears that the trial court may fail to do so. If defense counsel acquiesces in the final jury selection by, for example, indicating that he or she is satisfied with the empaneled jury, any objection is waived on appeal. Reversed and remanded.

¶ 16 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Justice WILKINS' opinion.

5. In this case, the trial court asked, "Is this the jury you selected?" Defense counsel replied, "Yes, Your Honor." In the future, such acquiescence in the jury selection will be deemed a waiver of a *Batson* objection.