2008 UT App 472

**STATE of Utah, Plaintiff and Appellee,**

v.

**Dennis ROSA–RE, Defendant and Appellant.**

**No. 20060432–CA.**

Court of Appeals of Utah.

Dec. 26, 2008.

Rehearing Denied Jan. 15, 2008.

---

Linda M. Jones, Michael D. Misner, and Heather Chesnut, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Christine F. Soltis, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before Judges BENCH, DAVIS, and McHUGH.

## MEMORANDUM DECISION

DAVIS, Judge:

¶ 1 Defendant Dennis Rosa–Re appeals his conviction for forcible sexual abuse, a second

degree felony. *See* Utah Code Ann. § 76–5–404 (2003) (current version as amended at Utah Code Ann. § 76–5–404 (2008)). This is the second time this court has considered his appeal. In the original appeal, we affirmed Defendant's conviction and refused to reach the merits of his claim that the trial court erred in overruling his *Batson* challenge. See *State v. Rosa–Re*, 2007 UT App 91U, 2007 WL 772769, *rev'd*, 2008 UT 53, 190 P.3d 1259. The Utah Supreme Court reversed our decision and remanded for consideration of whether the trial court erred in sustaining the prosecutor's peremptory challenges. See *State v. Rosa–Re*, 2008 UT 53, ¶ 15, 190 P.3d 1259. We now conclude that the trial court did not so err and therefore affirm.

¶ 2 It is well established that either party may exercise peremptory strikes to remove prospective jurors during jury selection "for virtually any reason, or for no reason at all." *State v. Cannon*, 2002 UT App 18, ¶ 6, 41 P.3d 1153. A party may not, however, strike a prospective juror solely on the basis of gender or race. *See State v. Colwell*, 2000 UT 8, ¶ 14, 994 P.2d 177. Accordingly, if a criminal defendant believes that a prosecutor has improperly excluded a juror on one of these bases, the defendant may challenge that exclusion as a violation of the Equal Protection Clause in accordance with *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and its progeny, *see, e.g., J.E.B. v. Alabama*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (extending *Batson's* prohibition against racial discrimination in the jury selection process to discrimination on the basis of gender). Such a challenge, whether based on alleged racial or gender discrimination, is referred to as a *Batson* challenge.

¶ 3 Courts apply a three-part analytical framework when considering whether a party's use of peremptory challenges violates the Equal Protection Clause. *See State v. Valdez*, 2006 UT 39, ¶ 15, 140 P.3d 1219.

> First, the opponent of the peremptory challenges must establish a prima facie case of purposeful discrimination in the selection of the petit jury.... Second, once the opponent has established a prima facie case, the burden shifts to the proponent of the peremptory challenges to rebut the prima facie case by offering neutral, nondiscriminatory justifications for the peremptory challenges.... Finally, if the proponent provides a sufficient explanation ..., the trial court must determine whether the opponent of the peremptory challenges has proven purposeful discrimination.

*Id.* Under this analytical framework, the burden of producing evidence shifts between the parties. At all times, however, the "ultimate burden of persuasion in a *Batson* challenge rests with the opponent of the peremptory challenges." *Id.* ¶ 15 n. 10. Moreover, "[o]n appeal, a trial court's ruling on the issue of discriminatory intent [in step three] must be sustained unless it is clearly erroneous." *Snyder v. Louisiana*, —— U.S. ——, ——, 128 S.Ct. 1203, 1207, 170 L.Ed.2d 175 (2008); *see also Hernandez v. New York*, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) ("Deference to trial court findings on the issue of discriminatory intent makes particular sense in [the *Batson*] context because ... the finding[s] largely will turn on evaluation of credibility." (internal quotation marks omitted)).

¶ 4 As an initial matter, we choose to briefly clarify the third step of the *Batson* analysis. Under the third step, the trial court must "weigh[ ] the evidence obtained in the first two steps and determine[ ] whether the opponent of the peremptory challenges has carried his burden to prove purposeful discrimination." *Valdez*, 2006 UT 39, ¶ 15 n. 10, 140 P.3d 1219. In this case, however, the parties concede—and we agree—that "the prosecutor waived the issue of whether a prima facie case was established when he failed to contest its sufficiency and instead provided a rebuttal explanation for the [*Batson* ] challenge." *See State v. Colwell*, 2000 UT 8, ¶ 18, 994 P.2d 177; *see also State v. Higginbotham*, 917 P.2d 545, 547 (Utah 1996). Accordingly, "[w]e pass, without analysis, the question whether [Defendant] ... made a prima facie showing of intentional discrimination, inasmuch as the prosecutor offered his explanation and the trial court ... effectively 'ruled on the ultimate question

of intentional discrimination.' " [1] *United States v. Perez*, 35 F.3d 632, 635 (1st Cir. 1994) (quoting *Hernandez*, 500 U.S. at 359, 111 S.Ct. 1859).

¶ 5 Although here we are precluded from reviewing the sufficiency of the defense's prima facie case under step one, we conclude that it is appropriate for trial courts in step three to consider the totality of the relevant facts, including the strength or weakness of the prima facie case, in determining whether the opponent of a peremptory strike has carried his burden to prove intentional discrimination. Indeed, the United States Supreme Court has made "clear that in considering a *Batson* objection ..., all of the circumstances that bear upon the issue of [gender] animosity must be consulted." *Snyder*, 128 S.Ct. at 1208. Moreover, "[a]n invidious discriminatory purpose may often be inferred from the totality of the relevant facts." *Hernandez*, 500 U.S. at 363, 111 S.Ct. 1859 (internal quotation marks omitted).

¶ 6 In this case, the totality of the relevant facts presented by the parties in steps one and two include, but are not limited to, the following: the trial court's first-hand observations of the voir dire questioning and responses of the jurors; the pattern of the strikes by both parties, i.e., both the defense and the prosecution struck three men and one woman; the credibility of the prosecutor's explanations for the strikes; the fact that both the alleged victim and perpetrator were male, thus undercutting the defense's

gender-based arguments; [2] the strength of the defense's prima facie case; and the defense's ultimate burden to prove intentional discrimination. Given all of these circumstances, as well as the highly deferential standard applied to trial courts' determinations of discriminatory intent, *see Snyder*, 128 S.Ct. at 1206, we determine that the trial court did not commit clear error in sustaining the peremptory strikes.

¶ 7 Having clarified certain aspects of the third step, we proceed next to the second step of the *Batson* analysis, where the burden of production shifts to the proponent of the strike to offer race—or gender-neutral explanations for the peremptory challenges. *See Higginbotham*, 917 P.2d at 547. "At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed [gender-] neutral." *Hernandez*, 500 U.S. at 360, 111 S.Ct. 1859.

¶ 8 Defendant argues at length in his brief that under step two, the prosecutor failed to meet his evidentiary burden because his explanations for the peremptory strikes were inadequate and inconsistent. We disagree. Indeed, the prosecutor provided gender-neutral reasons for striking three men from the venire. As to the first juror, the prosecutor indicated that he "was looking for somebody with some education, it wasn't there." Regarding the second juror, the prosecutor voiced concern that as the chief executive officer of a large corporation, the

1. Although we decline to analyze whether Defendant made a prima facie case of intentional discrimination, we do note that the Defendant's reliance on statistical disparities between men and women on the venire is somewhat misleading. Defendant claims that the prosecutor struck seventy-five percent of the men on the venire, a number which, if accurate, might raise an inference of intentional discrimination. However, after the for-cause challenges, twenty one potential jurors remained: eleven men and ten women. The prosecutor subsequently dismissed three men and one woman, thus reducing the number of men on the venire by roughly twenty-seven percent. Of the eight men remaining on the venire, that number was only further reduced when the defense chose to eliminate three more men from the venire. "A defendant cannot exercise a peremptory strike against a [male] juror and then rely on the reduced number of [male]

jurors remaining on the venire to calculate the percentage of such jurors that have been previously excluded by the prosecution." *State v. Alvarez*, 872 P.2d 450, 457 (Utah 1994).

2. Although we recognize that the "potential for cynicism is particularly acute in cases where gender-related issues are prominent," *see J.E.B v. Alabama*, 511 U.S. 127, 140, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), this case does not seem to implicate the same issues that are present in a more "typical" sexual assault case, i.e., a case involving a male perpetrator and a female victim. In fact, because the alleged victim of the sexual assault in this case is male, it is entirely possible that the prosecution might have had incentives to retain males on the jury, rather than eliminate them.

juror would not "give [the case] the necessary attention that [was] needed." Finally, as to the third juror, the prosecutor stated that he had a "gut instinct" that the juror would not bring anything to the jury.[3] Under step two of the *Batson* analysis, nothing more is required. *See Rice v. Collins*, 546 U.S. 333, 338, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006) (noting that the second step in the *Batson* analysis "does not demand an explanation that is persuasive, or even plausible" (internal quotation marks omitted)).

 ¶ 9 At the third step of the *Batson* analysis, "it is for the trial court to decide the ultimate question of whether the defendant has proved that the prosecutor's strike was, in fact, motivated by [gender]." *United States v. Perez*, 35 F.3d 632, 636 (1st Cir. 1994). Stated another way, "the trial court must choose whether to believe the prosecutor's [gender]-neutral explanation.... This determination turns upon an assessment of the credibility of the prosecutor's explanation, the 'best evidence' of which 'often will be the demeanor of the attorney who exercises the challenge.' " *Id.* (quoting *Hernandez v. New York*, 500 U.S. 352, 365, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991)). We conclude that in this case, the trial court did not commit clear error in sustaining the prosecutor's peremptory strikes. Instead, the trial court properly considered the totality of relevant facts presented in steps one and two of the

*Batson* analysis.[4] The prosecutor then provided gender-neutral reasons for his strikes, and the trial court was in the best position to determine the credibility of those proffered justifications. Accordingly, we affirm.

¶ 10 WE CONCUR: RUSSELL W. BENCH, and Carolyn B. McHugh, Judges.

---

3. While peremptory strikes made solely on "gut instinct" or the demeanor of a juror should be viewed more suspiciously, *see Brown v. Kelly*, 973 F.2d 116, 121 (2d Cir.1992), *Batson* does not prohibit non discriminatory strikes based upon instinct or subjective factors, *see Rice v. Collins*, 546 U.S. 333, 343, 126 S.Ct. 969, 163 L.Ed.2d 824 (2006) (Breyer, J., concurring). *See generally State v. Litherland*, 2000 UT 76, ¶ 20, 12 P.3d 92 (recognizing that "jury selection is a highly subjective, judgmental, and intuitive process").

4. At oral argument, defense counsel implied that during step three of the *Batson* analysis, the trial court is required to make detailed factual findings regarding the justifications for each allegedly improperly stricken juror. We have found no authority suggesting that the trial court is, in fact, *required* to make such findings. To the contrary, "[i]n cases in which factual issues are presented to and must be resolved by the trial court but no findings ... appear in the record, we assume that the trier of facts found them in

accord with its decision." *State v. Ramirez*, 817 P.2d 774, 787 (Utah 1991) (internal quotation marks omitted); *cf. Hart v. State*, 238 Ga.App. 325, 517 S.E.2d 790, 793–94 (1999) ("[T]he trial court was not required to make factual findings on the record in support of its decision that the jurors should not be excused for cause. Factual findings are required only where the record shows on its face circumstances indicating that a potential juror has a compelling interest or bias in the case." (emphasis and internal quotation marks omitted)). As a practical matter, however, it may be beneficial for trial courts to "articulate the bases of their factual findings related to *Batson* challenges more clearly than occurred here." *United States v. Perez*, 35 F.3d 632, 636 (1st Cir.1994). Such an exercise "fosters confidence in the administration of justice without [gender] animus .... [and] eases appellate review of a trial court's *Batson* ruling. Most importantly, it ensures that the trial court has indeed made the crucial credibility determination that is afforded such great respect on appeal." *Id.*