Hillsborough-northern judicial district
No. 2011-756

THE STATE OF NEW HAMPSHIRE

v.

MOHAMED OUAHMAN

Argued: October 18, 2012
Opinion Issued: December 7, 2012

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Brianna M. Sinon*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

CONBOY, J. After a jury trial in Superior Court (*Garfunkel*, J.), the defendant, Mohamed Ouahman, was convicted of two counts of kidnapping, *see* RSA 633:1, I(d) (2007), and two counts of robbery, *see* RSA 636:1 (2007). On appeal, he argues that the trial court erred by overruling his objection to the State's use of its peremptory challenges to strike male jurors. We affirm.

The following facts are drawn from the record or are otherwise undisputed. The defendant was indicted for the kidnapping and robbery of two men. During jury selection, the trial court began by reading to the venire a list of witnesses and asking a series of questions for purposes of preliminary *voir dire*. The venire consisted of twenty-nine potential jurors: sixteen women and thirteen men.

The court clerk then randomly drew names from a box containing the names of all twenty-nine potential jurors. As each name was drawn, the juror indicated whether the juror had a "yes" answer to any of the court's preliminary questions. If the juror answered negatively, the juror was seated in the jury box. If the juror answered affirmatively, the juror was questioned further by the court. The parties were also given the opportunity to challenge the juror for cause. If found qualified by the court, the juror was then seated. This process continued until fourteen jurors were seated in the jury box. At that point, the jury panel consisted of six women and eight men.

The parties then took turns exercising their three peremptory challenges privately at the clerk's bench. *See* RSA 606:3, III (2001); RSA 606:4, III (2001). As each juror was stricken, the court clerk randomly selected the name of another potential juror from the venire. If found qualified, that juror replaced the challenged juror; if not found qualified, another name

was drawn. The State ultimately struck three men, one of whom the State had been unsuccessful in striking for cause. That juror had indicated that he might be more skeptical of a police officer's testimony than the testimony of other witnesses.

Following the State's third peremptory strike, the defendant raised a "*Batson* challenge," arguing that the State was improperly striking jurors based on gender. *See Batson v. Kentucky*, 476 U.S. 79 (1986) (Equal Protection Clause forbids State from challenging juror solely on account of race), *overruled in part by Powers v. Ohio*, 499 U.S. 400 (1991); *J. E. B. v. Alabama ex rel. T. B.*, 511 U.S. 127, 130-31 (1994) (forbidding peremptory challenges based on gender). The prosecutor responded that she had not noticed that she had stricken only male jurors. She also stated, "I based my challenges on the responses they've given and the information in their questionnaire[s]." The trial court then overruled the defendant's objection without explanation. The final jury panel consisted of nine women and five men. The defendant was convicted of all counts, and this appeal followed.

On appeal, the defendant contends that the trial court erred by denying his *Batson* challenge to the State's use of peremptory challenges to strike only male jurors. He argues that this denial violated his equal protection rights. Notably, he does not specify whether he relies on the State Constitution, the Federal Constitution, or both. Accordingly, we construe his argument as predicated on federal law only. *See State v. Hartford*, 132 N.H. 580, 583 (1989).

■ "[T]he State's privilege to strike individual jurors through peremptory challenges[] is subject to the commands of the Equal Protection Clause." *Batson*, 476 U.S. at 89. When a defendant objects on the basis of gender discrimination under *Batson*, courts employ a three-step inquiry:

> Once the opponent of a peremptory challenge has made out a prima facie case of gender-based discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a gender-neutral explanation (step 2). If a gender-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful gender-based discrimination.

*State v. Taylor*, 142 N.H. 6, 9-10 (1997) (quotation and brackets omitted). "[A] party alleging gender discrimination must make a prima facie showing of intentional discrimination before the party exercising the challenge is required to explain the basis for the strike." *Id.* at 10 (quotation omitted).

The defendant argues that he established a *prima facie* case of gender discrimination and that the State failed to come forward with a gender-

neutral explanation for its strikes. He further maintains that the trial court erroneously and prematurely ended the *Batson* inquiry despite his *prima facie* showing. We acknowledge that the trial court did not require the State to provide a gender-neutral explanation for its strikes; instead, the court simply denied the defendant's challenge without further explanation. We interpret the trial court's action as an implicit determination that the defendant failed to make a *prima facie* showing of discrimination, *see United States v. Girouard*, 521 F.3d 110, 115 (1st Cir. 2008), which we will uphold unless it is clearly erroneous, *Taylor*, 142 N.H. at 10.

■ In order to establish a *prima facie* case of gender discrimination under *Batson*, "a defendant must point to facts and circumstances that raise an inference of impermissible discrimination." *Id.* "[T]he trial court should consider all relevant circumstances in determining whether a defendant has made the necessary *prima facie* showing." *Id.* (quotation omitted). Under this inquiry, "the prosecutor's pattern of peremptory strikes is significant[,] as are the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges." *Lark v. Pennsylvania Dept. of Corrections*, 645 F.3d 596, 620 (3d Cir. 2011) (quotation omitted) (challenges based on race). Additional factors include the number of potential jurors in the protected category, the nature of the crime, and whether the defendant or the victim is a member of the protected category. *See id.*

Here, the defendant argues that the State's use of all of its allotted peremptory strikes to remove men from the jury supports at least an inference of gender discrimination. We disagree.

■ To support his argument, the defendant observes that of the twenty qualified members of the venire, eleven were women and nine were men. He maintains that because the qualified venire members contained more women than men, the probability of the State striking three men for nondiscriminatory reasons is low. However, the selection process utilized by the trial court resulted in the seating of only fourteen jurors against whom the peremptory challenges could be exercised. That panel consisted of six women and eight men. Thus, there was actually a higher likelihood that the State would strike male jurors. *See United States v. Martinez*, 621 F.3d 101, 110-11 (2d Cir. 2010), *cert. denied sub nom. Paris v. United States*, 131 S. Ct. 1622 (2011).

■ Nor is the sole fact that the State used all three of its peremptory challenges to strike male jurors sufficient to require an inference of gender discrimination. "Although an inference of discrimination *may* arise from the number of peremptory strikes that the prosecutor directs at members

of a cognizable group, such an inference does not *automatically* spring from the prosecution's use of a limited number of peremptory challenges removing group members." *Taylor*, 142 N.H. at 10 (citations omitted). "A defendant who advances a *Batson* argument ordinarily should come forward with facts, not just numbers alone." *Id.* at 11 (quotation omitted).

Furthermore, here, two other relevant factors weigh against an inference of gender-based discrimination. First, prior to exercising its peremptory challenges, the State unsuccessfully requested that one of the three stricken male jurors be excused for cause because he agreed, on *voir dire*, that it was possible he would be more skeptical of a police officer's testimony than the testimony of other witnesses. Striking that juror does not reflect gender-based animus; instead, it reflects a concern for the "juror's ability to reach a fair and impartial verdict." *United States v. Bergodere*, 40 F.3d 512, 516 (1st Cir. 1994). Also, the defendant, a male, was charged with robbing and kidnapping two men. Under these circumstances, the striking of only male jurors does not support an inference of discrimination. *See State v. Rosa-Re*, 200 P.3d 670, 673 (Utah Ct. App. 2008) (*Batson* challenge to the striking of male jurors was undercut where both the defendant and the alleged victim were males). Thus, we conclude that the trial court's implicit determination that the defendant failed to establish a *prima facie* case of gender discrimination was not clearly erroneous.

■ Accordingly, we hold that the trial court did not err in denying the defendant's *Batson* challenge. We note, however, that the trial court provided no explanation for its ruling. "Because of the importance of [a defendant's equal protection rights], as well as the societal and judicial interests implicated, we . . . direct [the] trial courts to carefully follow each of *Batson*'s three steps." *People v. Knight*, 701 N.W.2d 715, 724 (Mich. 2005). "[W]e further urge the courts to clearly articulate their findings and conclusions with respect to each step on the record." *Id.*

All other issues the defendant raised in his notice of appeal, but did not brief, are deemed waived. *State v. King*, 162 N.H. 629, 633 (2011).

*Affirmed.*

DALIANIS, C.J., and HICKS, LYNN and BASSETT, JJ., concurred.